U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUALITY AIR SERVICES, LLC )
12288 Wilkins Ave, Suite I )
Rockville, MD 20852 )
 )
      Plaintiff, )
 )
v. )
 )
MILWAUKEE VALVE COMPANY, INC. )   Civil Action No. _____
d/b/a HAMMOND VALVE COMPANY )
 )   **JURY TRIAL DEMANDED**
serve: )
CT CORPORATION SYSTEM )
840 Excelsior Drive, Suite 200 )
Madison, WI 53717 )
 )
      Defendant. )

## COMPLAINT

Plaintiff Quality Air Services, LLC ("Quality Air"), by counsel, hereby files its Complaint against Defendant Milwaukee Valve Company, Inc., d/b/a Hammond Valve Company ("Hammond") and states as follows:

### SUMMARY

This is a products liability action based on the manufacture and distribution of defective valves used in high rise residential buildings to regulate hot and cold water systems. Plaintiff Quality Air Services, LLC ("Quality Air") had the misfortune of installing over 13,000 such valves throughout the Washington D.C. metropolitan area, believing that the valves were suitable for the purpose they were designed. Unfortunately for Quality Air and its customers, the Defendant Milwaukee Valve Company, Inc. designed and/or manufactured the valves improperly such that a product

which should have a service life of 60 years or more is cracking and breaking after only months of service. The reason for these failures is shoddy design and manufacturing which incorporate insufficient metal and reinforcement in the valves. Since each valve delivers highly pressurized hot and cold water, a rupture can cause substantial damage to property and serious personal injury.

Quality Air files this Complaint to hold Milwaukee Valve liable for all damages incurred to date and for the costs of valve replacement and repairs which Quality Air will have to bear. Quality Air also seeks tort and statutory relief based on the manufacture, design and distribution of the defective product by Defendant.

## PARTIES

1.  Plaintiff Quality Air is a Maryland limited liability company with its principal place of business in Rockville, Maryland. Quality Air is in the heating, ventilation and air conditioning ("HVAC") installation and repair business, specializing in the restoration, maintenance and replacement of fan coil units (convectors) for residential condominiums and rental units within multi-family housing buildings.

2.  Quality Air provides its services primarily in the District of Columbia, Maryland, and Northern Virginia.

3.  Defendant Milwaukee Valve Company, Inc., d/b/a Hammond Valve Company ("Hammond") is, on information and belief, a Wisconsin corporation with its principal place of business in New Berlin, Wisconsin.

4.  Hammond is in the business of manufacturing and selling valves which are used in many commercial and domestic applications, including valves that are used in HVAC systems for multi-family housing buildings, such as those serviced by Quality Air. These valves are shipped in interstate commerce throughout the United States.

2

5.      On information and belief, Hammond has and continues to regularly conduct business in the District of Columbia and regularly sells its products either directly or through distributors for use throughout the United States, including to customers and end users in the District of Columbia, Maryland, and Virginia.

6.      At all times relevant herein, Hammond has regularly promoted itself, through internet and other forms of advertising, as being the "best, most responsive supplier in the industry" and it has represented to purchasers that its valves are fit for their specific purposes.

7.      Hammond has further represented that its valves and products comply with detailed specifications and stringent performance criteria, including certification by Underwriters Laboratories ("UL") and the American National Standards Institute ("ANSI"), two independent testing authorities in whom consumers and commercial firms rely to establish the fitness of a particular product.

8.      From approximately late 2004 through early 2007, Quality Air purchased 13,320 Hammond valves and installed several thousand of those valves in convectors in family housing units in the District of Columbia. The remainder were installed by Quality Air in Maryland and Virginia.

9.      Unbeknown to Quality Air at the time they were purchased and installed, all such Hammond valves were faulty and defective in the manner in which they were manufactured. As a direct consequence of the manufacturing defects, these valves are failing and have already caused leaks and flooding in homes in which they were installed, as well as damage to those homes and to adjacent property.

10.     It is the purchase, installation, and failure of these defective Hammond valves and the resulting damages to Quality Air during the time frame of approximately 2005 to date which form the basis for this suit.

## JURISDICTION AND VENUE

11. Jurisdiction is proper in this Court under 28 U.S.C § 1332 (Diversity of Citizenship). The matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and the Plaintiff and Defendant are citizens of different states. Venue is proper under 28 U.S.C. § 1391 (a) and (c) (course of conduct), since a substantial part of the events giving rise to these claims arose in the District of Columbia, the harm which results occurs in this district, and the Defendant by virtue of its business is deemed to reside in this district.

## GENERAL ALLEGATIONS

12. The allegations in paragraphs 1 – 11 are incorporated by reference herein.

13. As part of its services for repairing, maintaining and replacing convectors in HVAC units in thousands of condominium and family housing rental units in the District of Columbia, Maryland, and Northern Virginia, Quality Air purchased approximately 13,320 Hammond valves during the period from late 2004 until early 2007. In all cases the valve that Quality Air purchased was the Hammond "8911" one-half inch brass ball valve, which Hammond represented would withstand 600 pounds per square inch of water pressure at temperatures up to 250° Fahrenheit.

14. All such Hammond Valves were purchased by Quality Air from the Noland Company, which on information and belief is an authorized distributor of Hammond valves. Noland undertook no intervening actions with respect to the valves, merely selling the product as manufactured and packaged by Hammond.

15. No disclaimers of warranties or limitations of remedies of any kind were stated by Hammond, the manufacturer of the valves, with respect to the valves themselves.

16. To the contrary, all such valves were represented by Hammond on its website, in its shipping documents, and on the valves themselves, to be certified by UL and compliant with applicable ANSI standards for quality and reliability. Furthermore, all such valves were represented by Hammond on its website, in its shipping documents, and on the valves themselves, to be able to withstand 600 pounds per square inch of water pressure at temperatures up to 250° Fahrenheit.

17. In reliance upon those quality and performance representations by Hammond and expecting the product to perform as stated, Quality Air purchased 13,320 Hammond 8911 valves and installed them within condominiums and family rental units in mid and high rise buildings in the District of Columbia, Maryland, and Virginia from late 2004 until early 2007.

18. Quality Air installed the valves as "service" valves which would enable owners and occupants of the housing units, or their agents, to switch the water flow in their HVAC units from hot to cold and vice versa upon the change of seasons. Thus, for example, the occupants or the building manager could switch from cold water used for air conditioning in the summer to hot water used for heating in the winter. The Hammond valves were installed in the convectors by Quality Air for exactly that purpose, and Hammond designed, manufactured, and sold the valves to be used for exactly that purpose.

19. Because these valves are used to control the flow of either hot or cold water into the convectors, and because the water is greatly pressurized to allow it to flow to the upper floors of high-rise buildings, the design and manufacture of the valves are critically important. A sudden rupture or failure of such a valve can produce a torrent of water at high pressures and temperatures, which can cause flooding, property damage and personal injury to the occupants of the unit, as well as to other units and occupants nearby and on the floors below the failure. In other words, the express purpose of the valves is to avoid the very damage which the Hammond valves are causing.

20. On or about April 30 of 2007, a Hammond 8911 valve that Quality Air had installed only six months earlier in one residence within the Willoughby condominiums in Chevy Chase, Maryland, burst and flooded several condominium units and a restaurant on the ground floor, causing hundreds of thousands of dollars in damages.

21. At about the same time, another Hammond 8911 valve that Quality Air had installed only months before within a family housing unit in Crystal Towers in Arlington, Virginia, also broke and caused flooding within that unit.

22. As a result of those valve failures, Quality Air had those two Hammond 8911 valves tested by an independent, certified engineering laboratory and discovered that the valves were defectively manufactured and/or assembled by Hammond.

23. Specifically, it was determined by the independent engineering laboratory that both valves had failed due to stress corrosion cracking caused by faulty manufacturing or assembly of the valves. Furthermore, both valves had failed at almost exactly the same place on the valve.

24. Since those two initial Hammond valve failures, a total of approximately 15 Hammond valves have failed in various high rise buildings in which Quality Air had installed them in the District of Columbia, Maryland, and Virginia. In each case, the failure has been due to the same manufacturing or assembly defect by Hammond which has allowed stress corrosion cracking in the valve.

25. As a result of the repeated valve failures and the expectancy that all such defective valves will fail well before their expected life of 50 – 60 years and cause extensive damage and possible personal injury, Quality Air must replace all 13,320 Hammond 8911 valves that it has installed in convectors since late 2004.

26. The costs to Quality Air to replace all 13,320 Hammond 8911 valves will likely exceed $3,000,000.00. Furthermore, Quality Air has already suffered significant damages resulting from the diminution of its business reputation due to the Hammond valve failures, and it faces the almost certain likelihood of losing several highly lucrative maintenance contracts if the valve failures continue.

## COUNT I
### (Breach of Express Warranty)

27. The allegations of paragraphs 1 – 27 are incorporated by reference herein.

28. At all times relevant herein, Hammond expressly warranted that its 8911 valves were: fit for the particular purpose utilized; certified to comply with UL and ANSI standards; and designed and manufactured to withstand 600 pounds per square inch of water pressure at temperatures up to 250° Fahrenheit.

29. All of the Hammond 8911 Valves purchased by Quality Air were defective at the time of sale and failed to comply with the above warranties.

30. As a direct and proximate result of those breaches of express warranty, Quality Air has suffered and will continue to suffer damages in excess of $3,000,000.

WHEREFORE, Quality Air prays that judgment be entered in its favor against Defendant Milwaukee Valve Company, Inc. in an amount to be proven at trial, but not less than $3,000,000. In addition, Quality Air prays that it be awarded its costs, attorneys' fees, pre-judgment and post-judgment interest, and all other relief that the Court deems proper.

## COUNT II
### (Breach of Implied Warranty of Merchantability)

31. The allegations of paragraphs 1 – 30 are incorporated by reference herein.

32. At all times relevant herein, Hammond was a merchant with respect to all of the valves that were purchased by Quality Air.

33. At all times relevant herein, Hammond impliedly warranted that its 8911 valves were merchantable: i.e., they would pass without objection in the trade under the contract description; they were fit for the ordinary purposes that such valves are used; and they conformed to the promises and affirmations contained in Hammond's advertisements, specifications, and website.

34. All of the Hammond 8911 valves purchased by Quality Air were defective and failed to conform with Hammond's implied warranty of merchantability at the time they were purchased.

35. As a direct and proximate result of those breaches of implied warranty, Quality Air has suffered and will continue to suffer damages in excess of $3,000,000.

WHEREFORE, Quality Air prays that judgment be entered in its favor against Defendant Milwaukee Valve Company, Inc. in an amount to be proven at trial, but not less than $3,000,000. In addition, Quality Air prays that it be awarded its costs, attorneys' fees, pre-judgment and post-judgment interest, and all other relief that the Court deems proper.

## COUNT III

### (Breach of Implied Warranty of Fitness for Particular Purpose)

36. The allegations of paragraphs 1 – 35 are incorporated by reference herein.

37. At all times relevant herein, Hammond knew the particular purpose for which the valves were required and knew that the buyer was relying on Hammond's skill and judgment to select and furnish valves suitable for their service in HVAC convectors.

38. As a result of such knowledge by Hammond and reliance by Quality Air, Hammond impliedly warranted to Quality Air that its 8911 valves were fit for the particular purpose that they were purchased, i.e., to act as service valves in convectors, allowing the necessary seasonal changes of flow of hot and cold water into the convectors.

39. Hammond breached that implied warranty of fitness for particular purpose, by supplying valves to Quality Air which were defective and not suitable to allow the necessary changes of the flow of hot and cold water in convectors.

40. As a direct and proximate result of the breach of that implied warranty, Quality Air has suffered and will continue to suffer damages in excess of $3,000,000.

WHEREFORE, Quality Air prays that judgment be entered in its favor against Defendant Milwaukee Valve Company, Inc. in an amount to be proven at trial, but not less than $3,000,000. In addition, Quality Air prays that it be awarded its costs, attorneys' fees, pre-judgment and post-judgment interest, and all other relief that the Court deems proper.

## COUNT IV
### (Strict Liability)

40.  The allegations of paragraphs 1 – 39 are incorporated by reference herein.

41.  At all times relevant herein, Hammond was engaged in selling its 8911 valves for use in the District of Columbia, Maryland, and Virginia.

42.  All such Hammond 8911 valves were sold to Quality Air in a defective condition which was unreasonably dangerous to the people living in the condominiums and family rental units in the District of Columbia, Maryland, and Virginia.

43.  Hammond expected that its valves would reach Quality Air and the occupants of the condominiums and rental housing units without any substantial change from the condition in which the valves were sold.

44.  As a result of the defects in the 13,320 Hammond valves which were installed into the residential condominiums and rental housing units, the occupants of those units are in a dangerous situation which could result in injury to those occupants and damage to their property, as well as to the occupants of other units adjacent to and below them.

45.  As a result of selling and distributing these defective and dangerous valves, Hammond is strictly liable for those defects.

46.  As a direct and proximate result of Hammond's selling such defective and dangerous valves, Quality Air has suffered and will continue to suffer damages in excess of $3,000,000.

WHEREFORE, Quality Air prays that judgment be entered in its favor against Defendant Milwaukee Valve Company, Inc. in an amount to be proven at trial, but not less than $3,000,000. In addition, Quality Air prays that it be awarded its costs, attorneys' fees, pre-judgment and post-judgment interest, and all other relief that the Court deems proper.

## COUNT V
### (Violations of Consumer Protection Act)

47. The allegations of paragraphs 1 – 46 are incorporated by reference herein.

48. Hammond's representations to Quality Air and to all consumers in the District of Columbia and elsewhere that its 8911 valves were suitable for their intended purpose, UL certified, compliant with ANSI standards, and designed and manufactured to withstand at least 600 pounds per square inch of water pressure at temperatures up to 250° Fahrenheit were false.

49. In fact, the Hammond 8911 valves that Quality Air purchased and installed in the condominiums and residential rental units in the District of Columbia, Maryland, and Virginia were not suitable for their intended purpose, not UL certified, not compliant with ANSI standards and not designed and manufactured to withstand 600 pounds per square inch of water pressure at temperatures up to 250° Fahrenheit. All of the valves which have burst to date have failed at pressures and temperatures well below those that they were allegedly designed to withstand.

50. All such misrepresentations by Hammond involving the 13,320 Hammond 8911 valves are Unlawful Trade Practices and violations of the Consumer Protection Act, D.C. Code § 28 – 3904 (d) and (e).

51. As a direct and proximate result of Hammond's violations of the above-referenced Consumer Protection Ace, Quality Air has suffered and will continue to suffer damages in excess of $3,000,000. Pursuant to the Consumer Protection Act, Quality Air is entitled to recover the following:

    a. Treble damages ($9,000,000) or $1,500 per violation times 13,320 violations ($19,980,000), whichever is greater;
    b. Reasonable attorneys' fees;
    c. Punitive damages; and
    d. All other relief the Court deems proper.

WHEREFORE, Quality Air prays that judgment be entered in its favor and that it be awarded compensatory damages against Defendant Milwaukee Valve Company, Inc. in the amount of $19,980,000, plus attorneys' fees incurred in this action, plus punitive damages in the amount of $9,000,000, plus pre-judgment and post-judgment interest, plus any further relief that the Court deems proper.

## COUNT VI
**(Declaratory Judgment)**

52. The allegations of paragraphs 1 – 51 are incorporated by reference herein.

53. As a result of Quality Air's installation of the defective Hammond valves in over 6,000 residential units in the District of Columbia, Maryland, and Virginia, it has been the target of several claims involving those valves, including a lawsuit in Montgomery County, Maryland, and other claims from owners of other damaged units. It also faces the risk of being sued for damages for all past and future valve failures.

54. Furthermore, as a result of the defective Hammond valves, Quality Air faces the likelihood that it will lose millions of dollars in annual revenue if its ongoing maintenance contracts are terminated, when the valve failures continue.

55. Due to the ongoing nature of Quality Air's potential legal exposure to possible claims for personal injury and/or property damage caused by defective Hammond valves, and its potential for lost business income, Quality Air seeks a declaratory judgment under 28 U.S.C. § 2201, that all such losses, including attorneys' fees incurred in defending such claims, are the responsibility of Hammond.

WHEREFORE, Quality Air asks this Court to enter a declaratory judgment, holding Defendant Milwaukee Valve Company, Inc. liable for all losses and damages, including attorneys' fees, suffered by or incurred by Quality Air as a result of the defective valves.

## COUNT VII
### (Fraud and Deceit)

56. The allegations of paragraphs 1 – 55 are incorporated by reference herein.

57. On information and belief, Hammond was fully aware that it manufactured defective valves which it then placed in commerce for distribution to the public.

58. Although fully aware of the danger posed by the valves, Hammond acted with reckless, willful and wanton disregard for the safety of the public, knowing full well that its defective valves could cause damage to property and injury to persons.

59. Hammond's actions were malicious and egregious, constitute fraud and deceit, and warrant the imposition of punitive damages so as to deter Hammond from

further misconduct and to render the defective distribution more than a cost of doing business.

60. As a direct and proximate result of that fraud and deceit, Quality Air has suffered damages in excess of $3,000,000.

WHEREFORE, Quality Air prays that judgment be entered in its favor against Defendant Milwaukee Valve Company, Inc. in an amount to be proven at trial, but not less than $3,000,000. In addition, Quality Air prays that it be awarded punitive damages in the amount of $9,000,000, plus its costs, attorneys' fees, pre-judgment and post-judgment interest, and all other relief that the Court deems proper.

**PLAINTIFF REQUESTS TRIAL BY JURY**

Respectfully submitted,
Quality Air Services, LLC
By counsel

GRAD, LOGAN & KLEWANS, P.C.

By: _____
Kevin Byrnes (D.C. Bar No. 480195)
Francis X. McCullough (D.C. Bar No. 350918)
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
(703) 548-8400 (Telephone)
(703) 836-6289 (Facsimile)
*Counsel for Plaintiff*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Quality Air Services, LLC

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   88888
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Milwaukee Valve Company, Inc. d/b/a Hammond Valve Company

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

GRAD, LOGAN & KLEWANS, P.C.
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
(703) 548-8400

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ● 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ● E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☒ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 20,000,000.00   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE April 22, 2008    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.