UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUALITY AIR SERVICES, LLC
12288 Wilkins Ave., Suite I
Rockville, Maryland  20852

          Plaintiff,

v.

MILWAUKEE VALVE COMPANY,
INC. d/b/a HAMMOND VALVE
COMPANY,
16550 West Stratton Drive
New Berlin, Wisconsin, 53151

          Defendant.

08 CV 00690 (ESH)

## DEFENDANT'S MOTION TO DISMISS

Comes now the Defendant, by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b), moves for an Order dismissing Plaintiff's Complaint in its entirety for lack of personal jurisdiction as set forth in the attached Memorandum, incorporated herein by reference.

Defendant also asserts independent bases for dismissal of Counts V, VI and VII of the Complaint for the reasons set forth in the accompanying Memorandum.  As to Count VI, Declaratory Judgment, the possibility of future claims against the Plaintiff does not present an actual controversy that is justiciable under 28 U.S.C. §2201(a).  Accordingly, the Court does not have jurisdiction such that it may award the relief sought by this Count.   Regarding Count V, Violation of the Consumer Protection Act, the Act is inapplicable to the

set of facts alleged by the Plaintiff. As a result, Count V fails to state a cause of action upon which relief may be granted. With regard to Count VII, Fraud, Plaintiff has failed to plead fraud against Defendant with the requisite degree of specificity required by this Court and is subject to dismissal.

Additionally, because the fraud claim should be dismissed, the prayer for punitive damages, which is based upon the fraud claim, should also be dismissed. Similarly, because Plaintiff's prayer for treble damages is based upon the Consumer Protection Act, which does not apply to these parties or this transaction, that prayer for relief should also be dismissed.

Wherefore, Defendant moves this Court to dismiss the Complaint in its entirety. Alternatively, Defendant seeks dismissal of Counts V, VI and VII of the Complaint, and for dismissal of the Plaintiff's prayers for treble and punitive damages.

Respectfully submitted,

_/s/ Valerie Tetro_____
Valerie L. Tetro, Esquire (#464450)
Jennifer S. Jackman, Esquire (#466922)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20036
(202) 659-6800/(202) 331-0573 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QUALITY AIR SERVICES, LLC<br>12288 Wilkins Ave., Suite I<br>Rockville, Maryland  20852<br><br>       Plaintiff,<br><br>v.<br><br>MILWAUKEE VALVE COMPANY,<br>INC. d/b/a HAMMOND VALVE<br>COMPANY<br><br>       Defendant. | 08 CV 00690 (ESH) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Plaintiff, Quality Air Services, LLC (Quality Air), asks this Court to assert personal jurisdiction over the Defendant, Milwaukee Valve Company, Inc. (Milwaukee Valve), a foreign corporation, based on the District of Columbia Long Arm Statute.  However, as set forth below, Defendant does not transact business in the District and has insufficient contacts with the District of Columbia to support the exercise of personal jurisdiction.  As a result, the Complaint should be dismissed in its entirety.

Additionally, at Count VI of its Complaint, Plaintiff asks this Court to issue an Order requiring Milwaukee Valve to indemnify it for "all losses and damages" suffered by it "as a result of the defective valves."  However, the allegations do not present an actual controversy to support the exercise of

jurisdiction by this Court, mandating dismissal. At Count V, the Plaintiff alleges that the Defendant has violated the Consumer Protection Act. However, the Act does not apply to the relationship or transaction between the parties hereto, and this Count should therefore be dismissed. Furthermore, the Plaintiff has failed to allege fraud with the specificity necessary to meet the requirements of both the letter and spirit of Fed. R. Civ. P. 9(b). Accordingly, Count VII is also subject to dismissal.

## I.    THE COURT LACKS IN PERSONAM JURISDICTION OVER THIS DEFENDANT.

Plaintiff alleges that this Court has personal jurisdiction over Defendant by virtue of the transacting business clause of the District of Columbia Long Arm Statute, or specific jurisdiction. However the facts of this case demonstrate not one but several reasons why the Court cannot exercise personal jurisdiction over the Defendant.

Defendant Milwaukee Valve Company, Inc. ("Milwaukee Valve") is a commercial valve manufacturer. See Affidavit of Geoff McLaughlin, Exhibit 1 hereto, ¶7. It is a Wisconsin corporation with its only offices in New Berlin, Wisconsin. Affidavit of Geoff McLaughlin, ¶4 . "Hammond Valve Company" is a brand name used by Milwaukee Valve. See Affidavit of Geoff McLaughlin, at ¶3. Milwaukee Valve has no representatives, offices or agents located in Washington, D.C. See Affidavit at ¶10. Its Hammond Valve products are sold through authorized distributors and wholesalers, and are not shipped directly to

service companies such as the Plaintiff. See Affidavit at ¶8. None of its distributors or wholesalers is located in the District of Columbia. See Affidavit at ¶9. In fact Plaintiff does not allege to the contrary but avers that it purchased all of the Hammond brand valves at issue from a distributor, Noland Company, in Virginia as Noland has no locations in the District of Columbia. See Complaint at¶15.

Milwaukee Valve has, on rare occasion and only at the specific request of a distributor, which are all located outside the District of Columbia, shipped valves directly to specific job sites within the District of Columbia. See Affidavit at ¶12. However, these shipments did not involve the Hammond 8911 valve which Plaintiff alleges to be defective. See Affidavit at ¶14. And, over the last 10 years, such shipments have been made no more than an average of 15 times per year. See Affidavit at ¶12. Expressed in terms of percentage of total volume, the number of valves shipped to the District of Columbia in the last 5 years amounts to .0025% of the volume of the Company's products shipped in the last 5 years. In terms of percentage of annual sales, the shipments made to the District of Columbia amounted to no more than .0025%.

Milwaukee Valve has never directly shipped the 8911 Hammond valve, the subject of the Complaint, to the District of Columbia. See Affidavit at ¶14. Milwaukee Valve does not solicit business in the District of Columbia. See Affidavit at ¶5. It has never paid taxes in the District of Columbia. Affidavit at ¶17. It is not registered to do business in the District of Columbia. Affidavit at

3

¶16.   And, the Plaintiff is, according to the Complaint, a Maryland resident. Complaint, ¶1.

A.    **Standard For Motion To Dismiss For Lack Of Personal Jurisdiction**

On a motion based upon the court's lack of personal jurisdiction, the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction.  <u>Capital Bank Intern. Ltd. v. Citigroup, Inc.</u>, 276 F.Supp.2d 72, 74 (D.D.C. 2003), citing <u>Crane v. Nat. Zoological Society</u>, 894 F.2d 454, 456 (D.C. Cir. 1990).  The plaintiff must allege specific facts connecting the defendant with the forum.  <u>Id.</u>, citing <u>Second Amendment Foundation v. U.S. Conference of Mayors</u>, 274 F.3d 521, 534 (D.C. Cir. 2001).   "Bare allegations and conclusory statements are insufficient."  <u>Id</u>.

B.    **Constitutional Limits On The Exercise of Personal Jurisdiction**

A federal court may exercise personal jurisdiction over a non-resident defendant only when service of process is authorized by statute and only when consistent with due process of law.  <u>Comsat Corp. v. Finshipyards, S.A.M.</u>, 900 F.Supp. 515, 519 (D.D.C. 1995), citing <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945).  But, even where there are contacts between the defendant and the forum sufficient to satisfy the requirements of due process, the Court "lacks the power to (exercise personal jurisdiction) unless the procedural requirements of effective service of process are satisfied." <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506, 514 (D.C. Cir. 2002), citing <u>Omni Capital Int'l, Ltd. v. Rudolf</u>

Wolff & Co., 484 U.S. 97, 104 (1987).  See also Gonzalez v. Internacional De Elevadores, S.A., 891 A.2d 227, 232 (D.C. 2006).

In that regard, the mere fact that a defendant was served with a summons is not determinative of the issue of jurisdiction.  The territorial limits of effective service are set forth at Fed. R. Civ. P. 4(k)(1), which instructs, in pertinent part, as follows:

> Serving a summons . . . establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; . . . .

Thus, whether service of process is effective depends upon whether there is an independent legal basis for the exercise of personal jurisdiction over the defendant.

That question is answered, in a diversity action such as this, by looking to the laws of the District of Columbia.  Gorman, 293 F. 3d at 509.  See also 4B Wright & Miller, Federal Practice and Procedure, §1126 (3rd Ed., 2000).  But even if applicable D.C. law supports the exercise of personal jurisdiction, the Court must also determine whether the exercise of jurisdiction would comport with the due process requirements of the U.S. Constitution.  Kline v. Williams, No. 05-01102, 2006 WL 2265414, *2 (D.D.C. Aug. 8, 2006), citing GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343, 1350 (D.C. Cir. 2000).

In the District of Columbia, there are two statutes that permit the exercise of in personam jurisdiction over a foreign corporation.  Section 13-334 of the D.C.

Code Ann. addresses service of process upon a foreign corporation "doing business" in the District of Columbia and provides as follows:

> (a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and cannot be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

> (b) When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employee of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District.

The other available statute is the "long arm" statute, D.C. Code Ann., §13-423, which permits courts to exercise personal jurisdiction over a non-resident defendant as follows:

> (a) . . . who acts directly or by an agent, as to a claim for relief arising from the person's . . . (1) *transacting any business* in the District of Columbia; . . . [1]

Given the virtual absence of any contacts between Milwaukee Valve and the District of Columbia, it is clear that, whichever statutory provision the Court applies leads to the same conclusion: this is not the proper Court to hear the case made by the Complaint herein.

### 1.    *D.C. Code Ann. §13-334*

---

[1]  This is the only potentially applicable section of the statute.  For instance, although subsection (a)(4) addresses jurisdiction arising out of tortious injury occurring in the District, the Plaintiff has not alleged that any tort was committed in the District of Columbia.  Accordingly, the argument will address only section (a)(1).

This section authorizes service of process upon a foreign corporation over which the court has "general jurisdiction." Gorman, 293 F.3d at 509. See also Gonzalez, 891 A.2d at 233.   Under the Due Process Clause of the Constitution, such general jurisdiction may only be exercised where the defendant has contacts with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Gorman, 293 F.3d at 232, quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).   To meet this standard, a corporation's business contacts with the forum must be "continuous and systematic." Gorman, 293 F.3d at 233, quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 411 (1984).   Consistent with this requirement, the D.C. Court of Appeals has permitted plaintiffs to use §13-334 as a basis for service only against foreign corporations doing "substantial business" in the District. Gonzalez, 891 A.2d at 233.   Similarly, the Court of Appeals has held such general jurisdiction exists only where the corporation has engaged in a "consistent pattern of regular business activity" within the District of Columbia.

As it is clear that this Defendant has not engaged in any consistent pattern of regular business activity in the District of Columbia, it is equally clear that the Plaintiff may not rely on this section to establish jurisdiction.   The statute allows service upon the foreign corporation only in the District of Columbia. See Gonzalez, 891 at 233 (holding that, where plaintiff served the defendant outside the District, there was not proper service; thus, it did not reach the question of

7

whether the defendant had been "doing business" in the District, pursuant to §13-334). Service of the instant action was made in Madison, Wisconsin. As the D.C. Circuit explained, a plaintiff who serves the defendant outside the District of Columbia is "foreclosed from benefitting from [the statute's] jurisdictional protection." <u>Gorman</u>, 293 F.3d at 514.

### 2.     *D.C. Code Ann., §13-423*

Because this Defendant is not present in the District of Columbia, the long-arm statute is the only basis upon which this Court could possibly exercise jurisdiction over the Defendant. <u>Savage v. Bioport, Inc.</u>, 460 F.Supp. 55, 60 (D.D.C. 2006), citing <u>Deutsch v. United States Dept. of Justice</u>, 881 F.Supp. 49, 52 (D.D.C. 1995), <u>affirmed</u>, 93 F.3d 986 (D.C. Cir. 1996).

In order to establish personal jurisdiction under section (a)(1) of the statute ("transacting business"),

> . . . a plaintiff must demonstrate that (1) the defendant transacted business in the District; (2) the claim arose from the business transacted in the District (so-called specific jurisdiction); (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'

<u>Jacobsen v. Oliver</u>, 201 F.Supp. 2d 93, 104 (D.D.C. 2002), quoting <u>Formica v. Cascade Candle Company</u>, 125 F.Supp. 2d 552, 553 (D.D.C. 2001).

"Transacting business" as used in the statute has been interpreted to mean business activity "purposefully directed" at the residents of the District of Columbia. <u>Gonzalez</u>, 891 A.2d at 234. Before jurisdiction under the long-arm

statue is proper, it must be shown that the defendant has undertaken some affirmative act by which it has brought itself within the jurisdiction and established minimum contact.  Everett v. Nissan Motor Corp., 628 A.2d 106, 107 (D.C. 1993).  This requirement arises from due process concerns, and is designed to ensure that a party is not subjected to suit in the District of Columbia unless it has such contacts with the District that, based upon those contacts, the defendant "should reasonably anticipate being haled into court" in the District of Columbia. Id., quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The requirements of "fair play and substantial justice" are not met unless the defendant has "purposefully directed" its business activity at the residents of the forum, and the litigation "arise(s) out of or relates to" those purposefully directed activities. Jacobsen, 201 F.Supp. 2d at 105; Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 328 and 331 (D.C. 2000), citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) and Helicopteros, 466 U.S. at 414.

As set forth above, Milwaukee Valve did not and does not purposefully direct any business to the District of Columbia.  It has no offices or property in the District of Columbia; it maintains no offices here; it does not solicit business in the District of Columbia; it is not registered to do business in the District of Columbia; it does not direct any advertising to the District of Columbia; it has never paid taxes to the District of Columbia.  It does not receive income directly from any District of Columbia resident; rather, its income is derived from orders placed by its distributors which are located outside of the District.  See Affidavit

9

of Geoff McLaughlin at ¶¶15, 8, 9.  The situation of the Defendant herein, for purposes of long-arm jurisdiction, is nearly indistinguishable from that of the defendant in Cascade Candle Company, 125 F.Supp. 2d 552.  There, the plaintiff (a resident of Maryland, like the Plaintiff herein), sued a nonresident corporation for injuries allegedly caused by a candle manufactured by the defendant.  The defendant, Cascade, sold the candles to a national distributor that had supplied the candle to a retail store in the District of Columbia, where the plaintiff had purchased it.  This Court noted that Cascade did not maintain any offices in the District, did not maintain or own property in the District, did not have any employees, agents or other representatives in the District, did not solicit business in the District, and did not engage in advertising directed the District.  Cascade's arrangements with its distributor were independent of any contracts between the distributor and the end users of the products.  Accordingly, this Court found the contacts with the District to be inadequate to justify the exercise of personal jurisdiction over Cascade.  The result applies to the facts here.

Although Milwaukee Valve has shipped goods on a very occasional basis into the District of Columbia, it has done so only at the request of its non-resident distributors, and for the convenience of its distributors.  See Affidavit at ¶12.  Moreover, mere shipment of goods into a forum state does not alone satisfy the due process prerequisites for the exercise of personal jurisdiction.  In the similar case, Verosol B.V. v. Hunter Douglas, Inc., 806 F.Supp. 582 (E.D. Va. 1992), the plaintiff attempted to exercise long-arm jurisdiction over Hunter Douglas

pursuant to a Virginia statute with language nearly identical to that of the District. After a lengthy due process analysis, the court noted that, although it had shipped products into Virginia, Hunter Douglas had no office, plant, equipment or employees in Virginia; nor was it registered to do business in Virginia. The court opined that the mere fact that a defendant ships its products into a state is not alone sufficient to establish "that the defendant is transacting business in the state," for purposes of long-arm jurisdiction. Verosol, 806 F.Supp. at 591. "Rather, . . . the shipments must be the result of the defendant's purposefully availing itself of the privilege of conducting business in the forum state." Id. In explaining its reasoning, the court referenced Ajax Realty Corp. v. J.F. Zook, Inc., 493 F.2d 818 (4th Cir. 1989), where the court concluded that a manufacturer's shipment of goods directly to Virginia at the request of its non-resident independent distributor, was not "transacting business," and did not merit the exercise of personal jurisdiction. Verosol, 806 F.Supp. at 583.

Likewise, although Defendant does publish advertisements in a trade journal with national distribution, it does not publish advertisements directed at residents of the District of Columbia, nor does it sell directly to end users located in the District. See Affidavit at ¶¶18, 8. Advertisements not directed specifically at District residents, do not amount to the purposeful direction of business toward the District, and thus do not provide a basis for jurisdiction against Milwaukee Valve. See Heroes, Inc. v. Heroes Foundation, 958 F.Supp. 1, 3 (D.D.C. 1996). Nor is the creation of a web page, such as the Defendant's, an act

11

purposefully directed at the District of Columbia. <u>Heroes</u>, 958 F.Supp. at 4. Although Hammond Valve products can be viewed via the Hammond Valve website, end users do not order products via the website (as explained previously, Hammond valves are sold to end users by distributors). See Affidavit of Geoff McLaughlin, ¶19. Hammond distributors do not place orders via the web site. <u>Id</u>. The nature of the Hammond Valve website is very different from that of the defendant in <u>Gorman</u>, and does not provide a basis for jurisdiction.

### 3.    *"Purposefully* Availing"

One of the most important factors in this jurisdictional analysis is the *purposefulness* of the defendant's activity. Where the alleged "business activity" of the defendant is the result of solicitation by the *plaintiff* or some other party, the activity is not the result of the *defendant's purposefully directed* business activity, and thus is not sufficient to bring the defendant within the jurisdiction of the court. As the Supreme Court explained in <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958), "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." In other words, when considering whether the few shipments of valves that the Defendant has made into the District of Columbia amounts to "purposeful" business activity, the Court must also consider <u>who</u> <u>initiated</u> the transactions. This is an important consideration in the instant case, because all shipments to

12

the District of Columbia – the only conceivable connection between the forum and the defendant – were made only at the request of the Defendant's non-resident distributors, pursuant to orders by persons or organizations with whom this Defendant had no relationship.  In fact, whether the defendant, as opposed to someone else, initiated the contact with the forum "is one of the most important factors" in the jurisdictional analysis.  Johansson Corp. v. Bowness Const. Co., 304 F.Supp. 2d 701, 705 (D.Md. 2004).  See F.C. Investmestment Group, LC v. IFX Markets, Ltd. 479 F.Supp. 2d 30, 39 (D.D.C. 2007)(discussing various decisions where "contacts" initiated by persons other than the defendant did not form a basis for jurisdiction); Textile Museum v. Eberstadt, 440 F.Supp. 330 (D.D.C. 1977)(where contacts were initiated by a person other than the defendant, no basis for jurisdiction); Federal Ins. Co. v. Lake Shore Inc., 886 F.2d 664 (4th Cir. 1989)(holding that, where a non-resident's sales in the forum state were initiated by in-state customers, and not the result of the defendant's solicitation, the transactions were not a result of the defendant's "purposefully availing" itself of the privileges of the forum, and thus were insufficient to confer jurisdiction).

### 4. *"Arising Out Of"*

In the event this Court were to conclude that the shipments are indicative of purposeful  business activity directed to the District of Columbia and not to and through non-resident distributors, the incidents alleged in the Complaint do not "arise out of" that minimal activity.  The statutory requirement of a nexus

between the defendant's "transacting business" in the District and the alleged injury in the District reflects the Supreme Court's due process jurisprudence. To comport with due process, jurisdiction may only be exercised where the claims for relief "arise out of or relate to" the purposefully directed business activities. Shoppers Food Warehouse, 746 A.2d at 332, quoting Burger King, 471 U.S. at 472.[2]

"Arising out of" as used in Section (a)(1) is synonymous with "relating to" or "having a 'substantial connection with.'" Jacobsen, 201 F.Supp. 2d at 105-106; Shoppers Food Warehouse, 746 A.2d at 335. Assuming, *arguendo*, that the few deliveries of valves into the District amounted to "transacting business," the claims of the Plaintiff herein do not "relate to" or "have a substantial connection with" those shipments of valves, none of which did not include the 8911 valve. See Affidavit of Geoff McLaughlin, ¶14 .

Because the Court's determination of personal jurisdiction is made on a case-by-case basis, Cascade Candle Company, 125 F.Supp. 2d at 554, illustrations of the degree of nexus necessary are worthwhile. In Savage v. Bioport, 460 F. Supp. 2d 55 (D.D.C. 2006), the Court evaluated a set of factors similar to those present in the instant action in analyzing the nexus. The plaintiff, a District resident, claimed that he had been injured while he was in Georgia by a vaccine manufactured by the defendant, which was located in Michigan. Like

---

[2] Section (a)(1) of the statute has been interpreted as having a reach that is coextensive to that of the Due Process Clause. Jacobsen, 201 F.Supp. 2d at 104.

Milwaukee Valve, Biport had no employees, offices, agents or property in the District of Columbia. <u>Biport</u>, 460 F.Supp. 2d at 58. It did, however, have certain contacts with the District: (1) contracts for sale of its vaccine to the U.S. Department of Health; (2) funding provided by George Washington University Medical Center; (3) a marketing meeting in the District with chiefs of the D.C.'s Police, Fire and Emergency Medical Services; (4) advertisements in local publications such as Roll Call, The Hill and The Washington Times; (5) contracts with the U.S. Department of Defense for sale of the vaccine; and (6) shipments of its vaccine into the District, made at the request of the Department of Defense, amounting to less than 1% of all DOD purchases. <u>Id</u>. The <u>Biport</u> Court concluded that, despite the existence of the above contacts, including the shipments of vaccine into the District, these contacts were not sufficiently related to plaintiff's claim, even if there had been no "government contacts" exception. The plaintiff's negligence, breach of warranty and strict liability product claims arose from alleged wrongdoing in Michigan. Thus, Biport was not subject to the jurisdiction of the District Court in the District of Columbia. <u>Biport</u>, 460 F.Supp. 2d at 62.

In <u>Gonzalez v. Internacional De Elevadores</u>, 891 A.2d 227, the plaintiff sued the defendant, an elevator repair company, for injuries she suffered on an allegedly malfunctioning elevator. The plaintiff was injured in 1996 at the U.S. Embassy in Mexico City, where she was employed. She sued the Mexican elevator repair company (IDESA) and its American parent company, ABM, and

its elevator subsidiary, Amtech.    Amtech, based in Capitol Heights, Maryland, had, between 1992 and 1997 ordered parts from IDESA for projects in the District of Columbia. The Court found no "substantial connection" between the defendant's contacts with D.C. and her claims for relief. Even though there had been delivery of parts by IDESA to the District of Columbia, the alleged negligence occurred in Mexico. The claim, therefore, could "not be said to have any relation to that company's sale of products for potential use in the District of Columbia. We find no basis in law or logic for concluding that appellant's claim arose from IDESA's contacts with the forum." Gonzalez, 891 A.2 at 236. In Trerotola v. Cotter, 601 A.2d 60 (D.C. 1991), the Court found "no discernible relationship" between a former employee's claims for benefits and the defendant/employer's contacts with the District. In that case, the plaintiff, who had been employed in the District by the Conference, which represented unions. The Conference had been located in the District and conducted its business of representing unions in the District. The plaintiff sued for a retirement benefit after he had left the employ of the Conference. Although the matter went to trial and the jury found in favor of the plaintiff, the Court of Appeals reversed on the basis that the Court did not have jurisdiction. The Court reasoned that, although it was true that the benefits would not have been available to the plaintiff but for his employment with the defendant in the District, the plaintiff's claim did not arise out of the Conference's activities in representing unions. Rather, it arose from the Conference's contractual obligation to pay benefits, which contract was

formed in Maryland. Trerotola, 601 A.2d at 63-64. Although insufficient nexus existed to establish personal jurisdiction in Bioport and Trerotola, both cases demonstrated an even more substantial, logical nexus between claim and activity than exists in this case.

In cases where a sufficient nexus has been found, the factual situations contrast dramatically with that presented here. For example, in Shoppers Warehouse, where a nonresident retailer advertised in District newspapers, there was a "substantial connection" to the plaintiff's injury in the defendant's Maryland store. The defendant had "deliberately and directly solicited" District residents to come to its stores, located just beyond the District border. Shoppers Food Warehouse, 746 A.2d at 335-336. The weakness of the nexus between the Defendant's activity and the alleged claims is amply illustrated by the Jacobsen decision. The Jacobsen case involved a logical nexus, unlike that presented herein. It can fairly be said that, *but for* the defendants' activity in the District of Columbia, there would have been no claim at all.

In this case, the only connection between the Defendant and the District of Columbia, as has been explained, is the occasional shipment of products into the District, at the request of non-resident distributors. It cannot be said that "but for" these few shipments of valves, *none of which included the 8911*, into specifically identified job sites for end use at those sites, there would have been no failures of the valves purchased by the Plaintiff at a distributor outside the District of Columbia. The Plaintiff's claims, negligence, breach of warranties,

and fraud, were allegedly all committed outside the District of Columbia.  The subject valves were not manufactured in the District.  No representations were made in the District and, even if representations had been directed to the District, the Plaintiff is a Maryland resident and purchased the products outside the District.  In short, as interpreted by the Courts of the District of Columbia, there is not a substantial connection between a few, occasional shipments made by the Defendant into the District of Columbia, at the request of its nonresident distributors, to end users with whom it has no contracts, which shipments did not consist primarily of the allegedly defective product. [3]

### 5.    *Manifest Interest Test*

In addition to considerations of basic fairness, whether the defendant actually transacted business in the District, and if so, whether the claims of the lawsuit "arise out of" that business, there is an additional factor that Courts consider before exercising long-arm jurisdiction against a non-resident: the District of Columbia's interest in the action.   Specifically, this Court has explained it thus:

> . . . the District has a manifest interest for providing a convenient forum in which residents may seek relief against nonresidents, especially where litigation would not impose an undue burden on the nonresident defendant.

Jacobsen, 201 F.Supp. 2d at 105, citing Shoppers Food Warehouse, 746 A.2d at 329.

---

[3]  In this regard, see La Chemise Lacoste v. General Mills, Inc., 53 F.R.D. 596 (D.Del. 1971), affd 487 F.2d 312 (3rd Cir. 1973)(no basis for personal jurisdiction where the foreign corporation's only in-state transactions involved a product not at issue in the lawsuit).

In this regard, it is noteworthy that the Plaintiff is a Maryland resident. Where the plaintiff is not a resident of the forum state either, the forum state's "legitimate interests in the dispute have considerably diminished." Jacobsen, 201 F.Supp. 2d at 108, quoting Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 114 (1987). See also Cascade Candle Company, 125 F.Supp. 2d at 556 (where the plaintiff was a Maryland resident, "the District's interests in having (the) case litigated within its borders is minimal"). District Courts are in accord. In Shoppers Food Warehouse, the Court held a state has a "manifest interest in providing its *residents* with a convenient forum for redressing injuries inflicted by out-of-state actors.") 746 A.2d at 328, quoting Burger King, 471 U.S. at 473 (emphasis added). The District does not have a "manifest interest" in providing relief to a non-resident for claims arising from products purchased outside the District of Columbia, and manufactured by a company located in Wisconsin, which company has never "transacted business" within the District.

In summary, the "contact" that the Defendant has had with the District is so minimal that it does not amount to "transacting business" under the long arm statute. Moreover, if it had "transacted business" here, its limited, occasional shipments have no logical connection to the claims made by the Plaintiff herein. For the Court to exercise jurisdiction over this nonresident corporation would not be consistent with the principles of basic fairness embodied in the due process clause and articulated by the Courts. Nor does the District of Columbia

have a significant interest in the litigation.  For all these reasons, the Complaint should be dismissed.

## II.    COUNT VI, DECLARATORY JUDGMENT

The primary reason why Count VI should be dismissed is the contingent nature of the allegations supporting the request for declaratory relief.  First, the underlying basis for this entire lawsuit is a fact that has yet to be proven: that this Defendant negligently manufactured a particular valve, or that the valve was otherwise defective, and that the damage described by the Plaintiff was not caused by its own negligent installation, inappropriate application, or one of a multitude of other reasons.  Second, even if Plaintiff were to establish Defendant's liability in this suit, Plaintiff seeks indemnity against future claims that have not been, and may never be, made against it.

Because declaratory judgment actions are frequently used in the realm of liability insurance, a comparison to such a case is illustrative of the patent inadequacy of the Plaintiff's claim.    In the typical insurance/declaratory judgment action, a loss or injury has occurred, and a claim has been made against the insured.  The insured presents the claim to the insurer.  Then, either the insurer (asserting that there is no coverage for the claim) or the insured (asserting that there is coverage) files a declaratory action seeking to have the court declare the rights and obligations of the parties to the insurance contract. The existence of a claim or suit for damages against the insured, which is an absolute prerequisite to trigger any obligations of the insurer, is not some future

20

contingency but has already occurred. Moreover, the existence of an actual suit or claim for which insurance is contested is the predicate to an "actual controversy" between the parties. The issue for the court to determine is not whether there is insurance coverage for prospective claims or suits which may never be brought and the facts of which are currently unknown, but whether there is coverage for actual existing claims or suits, arising under particular factual circumstances, and seeking specified damages from the insured.

To the extent there is any "contingency" in the claims against the insured, it is limited to dollar value of those claims which may not yet have been fixed or adjudicated in underlying proceedings. Such "contingency" is permitted by some courts, because it is not material to the determination whether, given the nature of the claim, there is coverage. In other words, the amount or value of the claim is not a material contingency in a declaratory action. See, e.g., Wright, Miller & Kane, 10A Federal Practice and Procedure, Civil 2nd, § 2757; see also National Railroad Passenger Corp. v. Consolidated Rail Corp., 670 F.2d 424, 430 (D.D.C. 1987) reversed on other grounds, 892 F.2d 1066 (D.C. Cir. 1990). Compare, however, Travelers Indemnity Co. v. Bally Total Fitness Holding, 448 F. Supp. 2d 976, 984 (N.D. Ill. 2006)(recognizing that the Seventh Circuit has consistently required that suit actually be brought against the insured before the court is permitted to exercise jurisdiction in a declaratory action regarding insurance coverage). Additionally, as the duties of the insurer include the duty to defend covered or potentially covered claims or suits against its insured, the

fact the amount of damages may not yet be finally determined, or that the insured may ultimately prevail in the underlying claim, are not contingencies that divest the court of its authority to determine the rights and duties of the parties.

In this case, the Plaintiff seeks a declaration of rights based upon claims that may or may not be made in the future, and where the factual circumstances supporting damages and causation are unknown and subject to many variables. [4] Thus, the situation presented by Count VI is distinct from the declaratory action over a liability insurance policy. For in the liability insurance declaratory action, the contract between the insured and the insurer provides a basis for coverage, and there is only one, and fairly certain, "contingency." The question to be decided by the Court in such a scenario is whether under the circumstances set forth in claim or suit against the insured, such claim falls within the coverage described in the policy.

Here, by contrast, there is no allegation that any claim has actually been made. In the insurance scenario, the entitlement to declaratory relief pivots upon the known language of the policy. In the scenario presented by the Plaintiff, the determination would pivot, on a case-by-case basis, upon (a) as-yet-to-be-made claims of damage to various properties made against Plaintiff, and (b) the as-yet-to-be proven causes of damage to the various as-yet-to-be-damaged

---

[4]  It is noteworthy in this regard that, although the Plaintiff claims to have installed over 13,000 of the allegedly defective valves, it is unclear how many or to what extent the Plaintiff has been subjected to claims arising from the allegedly defective valves.

properties (i.e., improper installation, improper maintenance or repair, or defect in the valve, or some combination thereof). This is not the stuff of an "actual controversy," permitting specific relief as required by U.S. Constitution, Art. III, § 2 and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Rather the Court would be rendering an advisory opinion on what the law would be, based on hypothetical facts and potential claims that have not and may never occur.

It is axiomatic that, in order for the Court to exercise jurisdiction over an alleged claim, the complaint must present an actual case or controversy. U.S. Constitution, Art. III, § 2; 28 U.S.C. § 2201(a); <u>Citizen Electronics Company, Ltd. v. Osram</u>, 377 F.Supp.2nd 149, 152 (D.D.C. 2005). When trying to determine whether a "case or controversy" exists, such that jurisdiction may be exercised under the Declaratory Judgment Act, the question to be answered by the trial court is:

> whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment (emphasis added).

<u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270 (1941); <u>Medimmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007). <u>See also</u> <u>Atlas Air, Inc. v. Air Line Pilots Association International</u>, 69 F. Supp. 2d 155, 162 (D.D.C. 1999). In order to amount to an actual case or controversy, a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," it must be "real and substantial," and it must "admit( ) of specific relief through a

decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical set of facts." Medimmune, 549 U.S. at 127, quoting Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240–241 (1937).

A decision by the Second Circuit offers a factual scenario that is more similar to that presented by this action than any decisions within this Circuit. In that case, Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10 (2nd Cir. 1993), the Court found that claims for indemnity against possible future claims are unworthy of the Court's exercise of jurisdiction. Olin arose from a dispute between Olin, who had owned an aluminum plant in Ohio, and Conalco, who had purchased the site. Prior to the sale, it was determined that the hydraulic fluid used in Olin's manufacturing process contained PCBs. Conalco alleged that, during cleanup efforts by Olin prior to the sale, some soil containing PCBs was deposited at various, unidentified sites. Based in part upon the language of the purchase agreement, Olin sought a declaration that, *if* there was contamination at such sites, Conalco *would be* obligated to indemnify it for any claims arising from those sites. After reciting the standards set forth in Maryland Casualty Co. and Hayward, the Second Circuit concluded that, with regard to possible claims arising from third-party sites, there was no actual controversy.

> [W]hether Conalco should be required to indemnify Olin for such liability should it ever arise is not a question of "sufficient immediacy and reality" to warrant the issuance at this time of a declaratory judgment . . . We cannot allow the declaratory judgment procedure to be used as a "medium for securing an advisory opinion in a controversy which has not arisen."

Olin, 5 F.3d at 17, quoting Coffman v. Breeze Corps., 323 U.S. 316, 324 (1945). And even where the plaintiff's request for declaratory relief amounted to a request for reimbursement from possible future settlements of already existing claims, the Southern District of New York held that despite the existence of actual claims, it was still insufficient and "a claim for such declaratory relief is premature and not ripe for decision . . . ." U.S. Healthcare, Inc. v. O'Brien, 868 F.Supp. 607, 615 (S.D.N.Y. 1994).    Certainly, claims for indemnity against possible future claims are even less worthy of the Court's exercise of jurisdiction.

Within the D.C. Circuit, the National Railroad case provides an illustrative contrast to the case currently before the Court.  In National Railroad, Conrail had brought a declaratory action against Amtrak.  There had been a disastrous train collision that resulted in deaths and injuries.  Prior to the collision, Amtrak and Conrail had entered into an operating agreement that contained an indemnity clause.  That clause required Amtrak to

> Indemnify and save harmless Conrail . . . irrespective of any negligence or fault of Contrail . . . howsoever the same shall occur or be caused, and from any and all liability for injuries to or death of any Amtrak passenger .. . .

National Railroad, 607 F. Supp. at 426.  Dozens of lawsuits were filed against Amtrak and Conrail, alleging negligence, gross negligence, wantonness and recklessness.   Relying upon the terms of the operating agreement, Conrail demanded that Amtrak provide defense and indemnity against the lawsuits. Amtrak denied that it was obligated under the agreement to indemnify Conrail

for reckless, wanton, willful or grossly negligent conduct of Contrail's employees because, despite the breadth of the agreement, indemnification for such conduct would be against public policy.   National Railroad, 670 F. Supp. at 425–427.  The District Court, quoting Browning-Ferris Industries of Alabama, Inc. v. Alabama Dept. of Environmental Mgmt., 799 F.2d 1473, 1478, (11th Cir. 1986), wrote that

> [i]n determining whether a dispute hinged on a contingency is justiciable, courts should focus on the "practical likelihood that the contingencies will occur and that the controversy is a real one."

National Railroad, 670 F.Supp at 430.

To explain its reasoning the National Railroad Court noted that "Amtrak's posture is analogous to that of an insurer."  National Railroad, 670 F.Supp at 429. The Court found that the matter was ripe for a declaratory judgment action, noting that both parties had actually been sued by injured persons or their representatives, and that the matter was of "sufficient immediacy," because a decision would help guide the parties in their handling of the litigation of the many lawsuits that were already pending.   Here, there is no indication of the existence or number of any lawsuits brought by customers of Quality Air.  The National Railroad Court recognized situations where declaratory actions are appropriate even where a lawsuit has not been filed, if the "peril of the insurer is of sufficient 'immediacy and reality.'"   National Railroad, 670 F. Supp. at 429, quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 244, reh. denied, 300 U.S. 687 (1931).

In <u>Becker v. Weinberg Group, Inc.</u>, Pension Trust, 473 F.Supp.2d 48 (D.D.C. 2007), the plaintiff, a participant in a pension plan administered by the defendant, sought damages against the defendants and a declaration directing the Pension Benefit Guaranty Corporation to conduct an audit of the pension plan in the event the Court found in her favor on her damages claims. The District Court granted the defendant's motion to dismiss as "unripe," noting that the plaintiff had asked for a declaratory order that would issue only <u>after</u> the Court ruled in her favor on her underlying claims. <u>Becker</u>, 473 F.Supp.2d at 70. Recognizing the contingent nature of the plaintiff's request, the District Court concluded that it was "clear that the Court lacks jurisdiction to award such relief." <u>Becker</u>, 473 F.Supp.2d at 71.

The example provided by the <u>Haworth</u> case reveals the inadequacy of and the contingent nature of the declaratory claim by Quality Air. <u>Haworth</u> was a declaratory action brought by a life and disability insurer. The insurer had been presented with claims for disability benefits prior to the insured's death. The insurer had denied the claims, and the insured had nonetheless continued to submit proof of his disability and had repeatedly submitted claims, supported by affidavits of physicians. The Court noted that, while the insured's representative had not yet brought a lawsuit, the insurer was, "in the absence of a judicial decision with respect to the alleged disability, . . . compelled to maintain reserves in excess of $20,000," a significant sum in the 1930s. The Court reasoned that, although no lawsuit had been filed by the insured, the insured had formally

27

presented a claim of a "present, specific right," defined by the policies.  The insurer, on the other side, had "made an equally definite claim" that the disability alleged by the insured did not exist.  The Haworth Court found sufficient immediacy and reality, concluding that "[s]uch a dispute is manifestly susceptible of judicial determination."  Haworth, 300 U.S. at 244.

The preceding cases, when considered together, reveal clearly that the instant case lacks those qualities which supported the Court's exercise of jurisdiction under the Declaratory Judgment Act.  For instance where the Court found a justiciable controversy, there were definite, singular triggering events satisfying the requirements of immediacy and reality: an automobile collision, followed by a lawsuit (Maryland Casualty); a single insured's disability, followed by a specific claim and demand for benefits under insurance policies (Haworth); or a single train collision, followed by lawsuits for specific damages (National Railroad).  Also important in those cases and absent here is the existence of a contract or indemnity agreement between the parties creating certain rights and obligations:  in National Railroad there was an indemnity agreement, and in Haworth and Maryland Casualty, there was an insurance policy.  And even where there was an indemnity agreement between the parties, the Olin Court made clear that possible future claims were not of sufficient immediacy and reality to support a claim for declaratory relief.

Unlike those cases, in this case Quality Air has averred that it may be subject to as many as 13,000 claims, which have yet to be made, from individuals

or businesses in D.C., Maryland and Virginia, the circumstances of which are as yet unknown. Because of the very multitude of future potential claims alleged by Quality Air, such claims, if filed, could arise from very disparate factual circumstances, including but not limited to: were the valves maintained, how often, by whom and whether the maintenance was performed correctly; did the valves actually fail and if so, what was the proximate cause? Plainly, as compared to National Railroad and the cases discussed therein, there are too many contingencies, insufficient "certainty" and not enough "immediacy" presented by the instant Complaint to merit the exercise of jurisdiction as to Count VI.

Finally, a consideration of the relief sought by the Plaintiff in Count IV serves to emphasize that the claim is far afield of accepted jurisprudence. Were the Court to award the relief sought by the Plaintiff, this Court would have to conclude as a matter of law that, in any case where a customer of Quality Air suffered damage, and Quality Air claimed that the damage was caused by a defective valve, Milwaukee would then be obligated to indemnify Quality Air. In other words, if the Court were to grant the relief sought by Count VI, it would deprive Milwaukee of the opportunity to test the allegations of the underlying tort claimant and of Quality Air as to (1) the nature and validity of the claim; (2) the existence and cause in fact of the alleged defect; and (3) the nature and extent of the alleged damages. Such a ruling would not comport with the intention of

the Declaratory Judgment Act, the Constitution, or simple notions of fairness that a defendant be permitted to contest liability and causation.

Because the allegations of the Plaintiff relative to Count VI do not present an actual controversy, and would deprive Defendant of its rights to determine and test the claims of the individual, would-be claims, the Court does not have and should not exercise jurisdiction to award declaratory relief.    Accordingly, Count VI should be dismissed pursuant to Civ. R. Civ. P. 12(b).

## III.    COUNT V, VIOLATION OF THE CONSUMER PROTECTION ACT

The Consumer Protection Act, D.C. Code Ann. §28-3904, prohibits "unlawful trade practices."    The Act prohibits various acts toward and representations or omissions to "consumers."  The Act was designed to "police trade practices arising only out of consumer-merchant relationships.  Howard v. Riggs National Bank, 432 A.2d 701, 709 (D.C. 1981).    It does not apply to transactions or relationships outside the consumer sphere.  Ford v. Chart One, 908 A.2d 72, 82 (D.C. 2006).

For the Act to be applicable, the transaction must involve a "consumer good" and be between a "merchant "and a consumer", as those terms are defined by the Act.  Neither prerequisite is satisfied here.  The relationship between Quality Air and Milwaukee Valve, as alleged by Quality Air, does not fit within the statutory parameters as it is not a "merchant" to "consumer" relationship.  Quality Air is not a "consumer" which is defined in the Act as

> . . . a person who does or would purchase, lease (from), or receive consumer goods or services, . . . or a person who does or would provide the economic demand for a trade practice; as an adjective, "consumer" describes anything, without exception, which is primarily for personal, household, or family use.

D.C. Code Ann. §28-3901(2).   Other relevant definitions include the following.  A "merchant" is

> . . . person who does or would sell, . . . directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice.

D.C. Code Ann. §28-3901(3).   A "trade practice" is

> . . . any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer or effectuate, a sale, lease or transfer, of consumer goods or services.

D.C. Code Ann. §28-3901(6).

Second, the valves described in the Complaint are not "consumer goods." This point is clearly made by the District Court in Potomac Plaza Terraces, Inc. v. QSC Products, Inc., 868 F. Supp. 346 (D.D.C. 1994).  There, the Court addressed whether roofing material met the definition of "consumer goods" for purposes of a claim by the plaintiff for breach of the implied warranty of merchantability. The defendant had argued that its express warranty had been made in lieu of the implied warranty of merchantability.  The plaintiff responded by arguing that, because D.C. Code Ann. § 28:2-316.1 did not permit the waiver or limitation of warranties as to consumer goods, the defendant's limited waiver was not valid as to the roofing material.  The Court disagreed.

31

The Court noted that "consumer goods" were defined in D.C. Code Ann. § 28:2-109 as "products used or bought for use primarily for personal, family, or household purposes." Potomac Plaza, 868 F. Supp. at 351. This is precisely the same definition of "consumer goods" in D.C. Code Ann. §28-3901(2). Employing a thorough analysis of the definition, the Court looked to other portions of the Commercial Code for the definition of "household purposes." Noting that the Code did not define "household purposes," it applied the definition of "household goods" set forth in D.C. Code Ann. § 28:7-209: "furniture, furnishings, and personal effects used by the depositor in the home." The Court concluded that roofing materials did not fit the definition of "consumer goods," as they were not used primarily for personal, family or household purposes such as furniture or furnishings.

Just as roofing material is not a "consumer good," the valves at issue are not "consumer goods." Thus, Defendant is not a "merchant" as defined in the statute, nor is the Plaintiff a "consumer." Count V accordingly fails to state a cause of action against the Defendant upon which relief may be granted and should be dismissed.

## IV.    COUNT VII, FRAUD AND DECEIT

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud must do so by stating "with particularity the circumstances constituting fraud . . . "The level of specificity required has been the subject of numerous appellate decisions.

It is clear from a review of recent federal decisions that the Plaintiff's allegations of fraud do not meet the requirements of the Rule. In alleging fraud, the plaintiff "must provide more than conclusory statements" that the actions of the defendant were fraudulent. McQueen v. Woodstream Corp., 248 F.R.D. 73, 78 (D.D.C. 2008). The purpose of the specificity requirement of Rule 9(b) is to provide the "who, what, when, where and how" of the alleged fraud. Id., citing DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), cert. denied, 498 U.S. 941 (1990). See also Millman v. Subaru of America, Inc., No. 07-4846, 2008 WL 623032 at *4, Prod. Liab. Rptr. (CCH) ¶ 17,941 (D.N.J., March 6, 2008). The Courts interpret Rules 9(b) and 8 together, to require that "the pleader (of fraud) must state the time, place and content of the false misrepresentations, (as well as) the fact misrepresented . . ." Kowal v. MCI Communications, Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994), quoting U.S. v. Cannon, 642 F.2d 1373, 1385 (D.C. Cir. 1981), cert. denied 455 U.S. 999 (1982). See also, 2 Moore's Federal Practice, § 9.03[1] (3rd ed. 2007).

Such principles require the Plaintiff herein to have alleged more specifically, inter alia, among other things, what was known about the alleged defect in the valve, when it was known, and who knew it and how it was known. The Woodstream case illustrates the degree of specificity required. There, plaintiff McQueen had developed a mouse and insect trap. McQueen sued Woodstream, alleging that Woodstream had misappropriated McQueen's design for its own use, and that Woodstream had defrauded him. In support of his

claim of fraud, McQueen had described generally his initial discussions and later meetings with Woodstream management, wherein he had provided a description of the trap.   McQueen also described how he learned that Woodstream had appropriated his design.   Nonetheless, the Court concluded that the allegations were inadequate to meet the requirements of Rule 9(b).  The McQueen then supplemented his pleadings, by identifying by time, place and date the discussions he had had with specifically identified Woodstream personnel.   Nonetheless, and despite the fact that McQueen had specified "matters such as the time, place and content of the false representations," the Court still found the allegations lacking. But, because McQueen was acting pro se, the Court permitted him to supplement the pleadings, requiring him to describe the technology that was allegedly misappropriated, and to identify which of the Woodstream products used that technology.   Woodstream, 248 F.R.D. at 76 – 78.  McQueen complied.  Even after the addition of information specifically requested by the Court, the Court concluded that the amended complaint "just barely" met the requirements of Rule 9(b).   Quality Air's allegations with regard to the fraud count fall far short of this standard.

The D.C. Circuit's opinion in U.S. v. Martin-Baker Aircraft Co., Ltd., 389 F.3d 1251 (D.C. Cir. 1994), provides another example of the pleadings requirements of Rule 9(b).  In Martin-Baker, Mr. Williams, a former employee of Martin-Baker Aircraft, alleged that the company had defrauded the U.S. government and violated the False Claims Act.   Martin-Baker, which had

manufactured an ejection system for Naval aircraft, had certified to the Navy that, to the best of its information and belief, the cost pricing it had submitted with its request for payment was accurate and current. Some of the parts of the ejection system were provided by Teledyne, which had to certify to Martin-Baker that its costs were current and accurate. Williams, who was the company's chief negotiator for the Navy contract, alleged that the costs claimed by Teledyne were inaccurate. He alleged that Martin-Baker had been made aware of that fact, but had disregarded the information, and certified to the Navy that the figures were current and accurate. Consequently, according to Williams, both Teledyne and Martin-Baker acted "in knowing deliberate ignorance and reckless disregard" of the information on the actual cost of the parts, and made false claims to the U.S. government. Williams stated that Teledyne employed multiple methods to support the certificates, all of them false.

The District Court dismissed the fraud count as inadequate under Rule 9(b). According to the Court, the allegations regarding the time period of the alleged fraud ("at least through 2002") failed to give the companies sufficient information to allow preparation of a response. Martin-Baker, 389 F.2d at 1257. The Court noted also that the complaint failed "to identify precisely who was involved" in the fraud. Id. Although the complaint did identify specific individuals by name, it did not explain the roles of these people in the alleged fraud. This failure to specifically identify persons involved:

> . . . not only failed to give the companies sufficient information to answer
> the complaint, but it also subjected the named individuals to vague,
> potentially damaging accusations of fraud.

Id. The Court also noted that, although the complaint was lengthy and even

"prolix," it did not set forth "facts that exemplify the purportedly fraudulent

scheme." Martin-Baker, 389 F.3d at 1258.

The purpose of the particularity requirement of Rule 9(b) is to "ensure

that the opponent has notice of the claim, prevent attacks on his reputation

where the claim for fraud is unsubstantiated, and protect him from a strike suit

brought solely for its settlement value." Woodstream, 248 F.R.D. at 77; see also

McCracken v. Daimler Chrysler Motors Co., LLC, 2008 WL 920344 at *6 (E.D. Pa.

April 3, 2008) (noting that the purpose of the rule is to put defendants "on notice

of the precise misconduct with which they are charged, and to safeguard (them)

against spurious charges of immoral or fraudulent behavior."). Similarly, in

Martin-Baker, D.C. Circuit explained that,

> Because 'fraud' encompasses a wide variety of activities, the requirements
> of Rule 9(b) guarantee all defendants sufficient information to allow for
> preparation of a response.

Martin-Baker, 389 F.3d at 1256, quoting U.S. v. Cannon, 642 F.2d 1373, 1386 (D.C.

Cir. 1981). The Martin-Baker Court added that the allegations of fraud must

enable the defendant to "defend against the charge and not just deny that they

have done anything wrong." Martin-Baker, 389 F.3d at 1259, quoting U.S. v.

SmithKline Beecham, Inc., 245 F. 3d 1048, 1052 (9th Cir. 2001).

For the same reasons, "information and belief" allegations do not satisfy Rule 9(b). <u>Bender v. Rocky Mountain Drilling Associates</u>, 648 F. Supp. 330, 336 (D.D.C. 1986). This, however, is precisely what the Plaintiff has provided, and nothing more. Plaintiff alleges only "upon information and belief Hammond was fully aware that it manufactured defective valves. . . ". See Complaint at ¶ 57. These allegations provide even less detail than that deemed insufficient in <u>Martin-Baker</u> or <u>Woodstream</u>. Quality Air provides no substance to support the allegation that Milwaukee "was fully aware that it manufactured defective valves." Complaint, ¶57. Quality Air provides no description of the alleged manufacturing defect; no indication of when Milwaukee learned of the alleged defect; no description of how Milwaukee learned of the alleged defect; no indication of what persons employed by Milwaukee are/were aware of the alleged defect; and no descriptions of the actions taken by these persons to conceal the alleged defect. As a result, the allegations are patently insufficient under <u>Woodstream</u>, <u>Martin-Baker</u> and <u>Bender</u>.

Fraud and deceit are serious allegations particularly with regard to one's business. As a result, a heightened pleading standard is imposed. Here, Plaintiff Quality Air has utterly failed to meet those requirements and to allege the who, what, when, where and how of the alleged fraud. Further, the only allegations made in this count, are that Defendant Milwaukee, a 100 year old company with an excellent name, reputation and standing in the industry, committed fraud upon its customers "on information and belief." It is indistinguishable from a

baseless "strike suit" that this and other federal courts have routinely dismissed. Quality Air has failed to provide the detail required by the Rules and by basic concepts of fairness and equity to support a fraud claim and, accordingly, the Count should be dismissed.

## V.    DAMAGES

Because the Consumer Protection Act does not apply to the subject transaction or to the parties, there is no basis for treble damages. Accordingly, the prayer for treble damages should be dismissed. Similarly, for the same reasons that the Plaintiff's fraud claim should be dismissed, so should the Plaintiff's claim for punitive damages, which is based solely upon the fraud claim.

## VI.    CONCLUSION

WHEREFORE, for the good and valid reasons set forth above, Defendant Milwaukee Valve Company, Inc. moves this Court to dismiss Plaintiff's Complaint against it in its entirety for lack of personal jurisdiction. In the alternative, Defendant seeks dismissal of Counts V, VI and VII, and for such further and additional relief as the Court deems proper.

Respectfully submitted,


 /s/ Valerie Tetro
Valerie L. Tetro, Esquire (#464450)
Jennifer S. Jackman, Esquire (#466922)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20036
(202) 659-6800/(202) 331-0573 (facsimile)


*218351*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

QUALITY AIR SERVICES, LLC

        Plaintiff,

v.                                                                        08 CV 00690 (ESH)

MILWAUKEE VALVE COMPANY,
INC. d/b/a HAMMOND VALVE
COMPANY

        Defendant.

---

**AFFIDAVIT OF GEOFF McLAUGHLIN
ON BEHALF OF MILWAUKEE VALVE COMPANY, INC.**

The undersigned, Geoff McLaughlin, makes this Affidavit upon personal knowledge and says:

1.     I am over the age of eighteen (18) years and otherwise competent to testify.

2.     I am the Vice President of Technical Support of Milwaukee Valve Company, Inc. (Milwaukee or Company), which is a corporation duly registered and authorized to conduct business under the laws of Wisconsin.

3.     Milwaukee acquired Hammond Valve Company in 1991 and sells Hammond Valve as a brand.

4.      The Company's principal place of business is 16550 West Stratton Drive, New Berlin, Wisconsin 53151.

5.      Milwaukee does not directly or by agent carry on a regular business and/or habitually transact in and engage in business in the District of Columbia.

6.      Milwaukee is not a party, directly or by an agent, to any contract to regularly supply goods, food, services or products in the District of Columbia, and does not derive substantial revenue from goods sold in the District of Columbia.

7.      Milwaukee is a manufacturer of more than 4,000 different types of manual and automated control valves used in commercial industries.

8.      Milwaukee does not and has not sold directly to end-users of its Hammond products; rather, it takes orders from authorized distributors and wholesalers.

9.      There are no authorized distributors or wholesalers of Hammond Valves in the District of Columbia.

10.      The Company does not maintain an office, factory, or any other operation in the District of Columbia; nor does it own, use or possess any real property in the District, either directly or by an agent.

11.      Milwaukee does not have any employees, agents or representatives in the District of Columbia.

12.     The Company has shipped some of its products directly into the District of Columbia to locations specified by and at the request of its distributors, all of which are outside the District of Columbia.  However, this has occurred on average 15 times per year over the last 5 years.  Expressed as a percentage of shipments, this amounts to not more than .0025% of total annual shipments made by the Company.

13.     Expressed as a function of income, the value of the shipments amounted to not more than .0025% of the Company's annual gross income.

14.     Of the valves that have been shipped directly to the District of Columbia since 2003, none of those were the Hammond 8911 valves.

15.     The Company does not receive income directly from the end-users of the valves, but from its distributors, none of whom are located in the District of Columbia.

16.     The Company is not registered with the Department of Consumer and Regulatory Affairs to do business in the District of Columbia.

17.     The Company has not paid taxes to the District of Columbia.

18.     Although it advertises in nationally distributed trade journals, Milwaukee does not direct advertising or otherwise market its business in the District of Columbia.

19.     The Company does not take orders through its website.  Rather, it delivers products to its distributors in response to direct orders from its distributors.

The Company does not conduct any business of any kind as an insurer or surety.

I solemnly affirm under the penalties of perjury, upon personal knowledge, that the contents of the foregoing Affidavit are true and correct.

MILWAUKEE VALVE COMPANY, INC.

Date: May 23, 2008            By: _____
                                  Geoff McLaughlin, Vice President
                                  Technical Support

219019

4

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

QUALITY AIR SERVICES, LLC,      *

                                08 CV 00690 (ESH)

          Plaintiff,      *

v.                        *

MILWAUKEE VALVE COMPANY,    *
INC. d/b/a HAMMOND VALVE
COMPANY,                 *

          Defendant.     *
_____

**ORDER GRANTING MOTION TO DISMISS**

      Upon Motion filed by the Defendant to Dismiss, the Court having

considered the Motion, the Opposition thereto, and the Reply to the Opposition,

      IT IS ORDERED that the Complaint shall be and hereby is DISMISSED for

lack of personal jurisdiction over the Defendant.


                              _____

                              Ellen Segal Huvelle, Judge