## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QUALITY AIR SERVICES, LLC

          Plaintiff,

v.

MILWAUKEE VALVE COMPANY,
INC. d/b/a HAMMOND VALVE
COMPANY,

          Defendant.

08 CV 00690 (ESH)

---

### REPLY TO OPPOSITION TO MOTION TO DISMISS

#### Summary of Reply

The Plaintiff fails to address the following facts in its Opposition: (1) the Defendant does not sell its products in the District of Columbia; (2) the valves at issue in this case were purchased by the Plaintiff in Maryland; (3) the valves were then brought into the District of Columbia by the Plaintiff, not the Defendant.  Rather, the substantial majority of the Opposition is devoted either to restating the allegations of the Complaint or making what appears to be an equitable plea to the Court about the potential for serious injury, based on its allegations and/or anticipated injury to persons other than Plaintiff.  But the Opposition provides little in the way of legal support for the exercise of personal jurisdiction over the Defendant.  Nor does the Plaintiff offer an explanation of why the District of Columbia has a manifest interest in an alleged injury to a Maryland company that occurred in Maryland.

The Plaintiff's arguments regarding its request for a declaratory judgment, its claim for fraud and deceit, and its claims under the Consumer Protection Act present even less in the way of substance. Its argument that declaratory judgment is appropriate culminates in a policy statement that the Court's exercise of declaratory power might force the Defendant to settle the case which, to this party's knowledge, has never been a legitimate basis for a court's exercise of jurisdiction under the Declaratory Judgment Act.

The Plaintiff offers no authority in support of its position that "fraud and deceit" are adequately pled, and concedes as much.

In its effort to keep its claims within the Consumer Protection Act, Plaintiff claims that it is a simple "consumer," and contends that, unlike the plaintiffs in the cases cited by the Defendant, this Plaintiff did not purchase the valve for commercial purposes. Such an argument is contrary to the evidence and a decision by the Court of Appeals of the District of Columbia, which affirmatively and clearly eliminates the applicability of the Act to the instant situation.

The Plaintiff has not met its burden in opposing the Motion. Accordingly, the Motion should be granted on both jurisdictional and substantive bases.

**I.     THERE IS NOT SUFFICIENT BASIS FOR *IN PERSONAM* JURISDICTION OVER THE DEFENDANT.**

The Plaintiff's arguments that <u>in personam</u> jurisdiction is proper can be divided into two categories:  that the Defendant "transacts business" in the

District as required by D.C. Code Ann. §13-423(a)(1); and, the Defendant has

caused tortious injury in the District of Columbia, pursuant to D.C. Code Ann.

§13-423(a)(4). Each is addressed below.

**A.      The Defendant Has Not "Transacted Business" In The District Of Columbia, And, Should This Court Determine Otherwise, The Plaintiff Has Failed To Establish Any Nexus Between The Alleged Injury And The Business "Transacted."**

The long-arm statute contains several requirements that must be met

before the court may exercise personal jurisdiction over a non-resident party.

The Plaintiff has, apparently, completely overlooked the requirement that it must

establish that its claims arose from the Defendant's transacting of business in the

District of Columbia. Neither the evidence nor the allegations offered by the

Plaintiff indicate the required connection between the Plaintiff's claims and the

"business" allegedly transacted by Defendant in the District. The requirements of

the statute are clear:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief <u>arising from</u> the person's –
>
> (1) transacting any business in the District of Columbia; . . . .

D.C. Code Ann. §13-423(a)(1) (emphasis added). Section 13-423(b) also instructs

that "[w]hen jurisdiction over a person is based solely upon this section, <u>only a</u>

<u>claim for relief arising from acts enumerated in this section may be asserted</u>

<u>against him</u>" (emphasis added). The long-arm statute requires a "significant

connection" between the claim and the alleged contact with the forum. <u>Gowens</u>

v. Dynacorp, 132 F.Supp.2d 38, 41 (D.D.C. 2001).   The Plaintiff devotes much text to the severity of anticipated losses and injuries, but fails to explain how those injuries "arose from" the business that the Defendant allegedly transacted in the District of Columbia.   As the Defendant pointed out in its Motion, this is a pivotal requirement that must be met before a court may exercise jurisdiction. See Memorandum in Support of Motion, pp. 13 – 18; Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 328 & 331 (D.C. 2000).  Yet there is neither argument nor evidence from the Plaintiff that the alleged injury to the Plaintiff arose from the business allegedly transacted by the Defendant in the District of Columbia. [1]

1.   **The Defendant Has Not "Transacted Business" In The District Of Columbia Within The Meaning Of The Long-Arm Statute.**

In order to make this point as clearly as possible, it is necessary to consider the activity that the Plaintiff offers as "transacting business."  The Plaintiff alleges that the following facts equate with "transacting business:" (1) the Defendant has on few occasions shipped some of its products to the District at the request of its out-of-state distributors, pursuant to purchases conducted outside the District of Columbia; (2) the Defendant's website indicates that it has Virginia and Maryland regional managers; (3) on its website, the Defendant claims to be a nationwide distributor of valve products; and (4) the Defendant has "taken no action" to prevent the use of its products in the District of Columbia.  Finally, the Plaintiff offers that because the Washington, D.C.

---

[1]  Of course, this argument assumes that there was business transacted in the District of Columbia, which is not the case.

metropolitan area is larger than the 10 square miles bounded by Western,
Northern, Eastern and Southern Avenues, the Defendants' transaction of
business in Maryland and Virginia are necessarily transactions in the District of
Columbia.  In a nutshell, Plaintiff asserts that Washington, D.C. also includes
portions of Maryland and Virginia. [2]

Each of these alleged "factual" assertions are discussed below, with an
explanation of their inadequacy as "transacting business" under the long-arm
statute.  Additionally, in section I.2. below, Defendant examines the absence of
nexus between the alleged business transacted and the alleged injuries.

**a.  *Occasional Shipments Do Not Amount To "Transacting Business."***

The few *shipments* that are made to the District of Columbia (.0025% of the
Defendant's annual sales) are not made as a result of solicitation of the end users
by the Defendant, but at the request of distributors, all of whom are located
outside the District.  In other words, these shipments do not amount to business
activity purposefully directed toward the District of Columbia.  The *sales* of the
products – the business activity -- that led to the request for direct shipment into
the District of Columbia took place in Maryland.  The Defendant receives its
income from distributors, none of whom are located in the District of Columbia.
It does not receive revenue from sales in the District, as set forth in the Affidavit

---

[2] The Plaintiff doesn't offer any suggestion about the extent of the "real" boundaries of
Washington, D.C. other than "northern" Virginia and "southern" Maryland.

of Geoff McLauglin, ¶15 ).  See, e.g., Formica v. Cascade Candle Co., 125 F. Supp.

2d 552, 554-555 (D.D.C. 2001).

In support of its argument that the Defendant is properly subject to

personal jurisdiction in the District of Columbia, the Plaintiff relies upon

decisions from foreign courts and their interpretations of the controversial

"stream of commerce" analysis.   Specifically, the Plaintiff offers two cases

involving shipments of products in an effort to overcome the fact that all sales of

the Defendant's products were in Maryland and that all shipments of those

products by the Defendant were made to Maryland.   Both cases, neither of

which are decisions within this Circuit, are distinguishable in a significant way.

> **i.    *Plaintiff's Contention That A Shipment Of Goods Amounts To "Transacting Business" Is Incorrect. Mere Shipment Of Goods At The Request Of A Distributor Is Not "Transacting Business."***

Plaintiff's contention that a shipment of goods satisfied "transacting

business" is incorrect; this argument was squarely addressed and rejected in

Verosol B.V. v. Hunter Douglas, Inc.,  806 F. Supp. 582, 590 (E.D. Va. 1992); see

also J. Baranello & Sons v. Hausman Industries, Inc., 86 F.R.D. 151, 156 (E.D. N.Y.

1980)(same holding, interpreting a long-arm statute containing language nearly

identical to the District's statute).   Mere shipments without some accompanying

effort to actually sell the product in that locale do not evidence the sort of

purposeful commercial effort necessary to justify personal jurisdiction.   As the

Court noted in Comsat Corp. v. Finshipyards S.A.M., 900 F. Supp. 515 (D.D.C.

1995), unilateral decisions by persons other than the defendant (e.g., the person or company who ordered from the Maryland distributor and the distributor itself), without effort or encouragement by the defendant (such as directed sales efforts) are insufficient to support jurisdiction. <u>Finshipyards</u>, 900 F. Supp. at 522.

The Plaintiff has not offered one case for the contrary proposition.[3]

The occasional shipments of products, none of which include the allegedly offending product and which were purchased outside the District of Columbia, then shipped to the District as a courtesy to the Defendant's Maryland distributor, do not demonstrate an intent to sell or service the District of Columbia marketplace. In other words, they do not reflect conscious efforts to develop or solicit business in the District of Columbia as required by the Supreme Court. Accordingly, they do not provide a legal basis for the exercise of personal jurisdiction against this Wisconsin Defendant.

   ii. *The "Stream Of Commerce" Authority Offered By The Plaintiff Either Undermines Its Argument Or Is Inconsistent With The Approach Applied By District Of Columbia Courts.*

---

[3] Plaintiff does offer <u>In re Baan Securities Litigation</u>, 81 F. Supp. 2d 75 (D.D.C. 2000), for the proposition that the "central issue" regarding the exercise of personal jurisdiction over a defendant is its "level of knowledge" that its products will be used in the District of Columbia. Plaintiff's Memorandum, p. 6. This is not an accurate summary of either <u>Baan</u> or Supreme Court jurisprudence on the subject. <u>See</u> <u>Baan</u>, 81 F. Supp. at 78 – 79; <u>Cascade Candle</u>, 125 F.Supp.2d at 555 (noting the Supreme Court's requirement in <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 US 286 (1980), of "something more" than knowledge that a product would enter the forum state). Rather, the pivotal matter is the defendant's "conscious efforts" to take advantage of the forum market. <u>See</u> <u>Cascade Candle</u>, 125 F. Supp. 2d at 555 (concluding that, because the defendant had "not engaged in any additional conduct to 'indicate an *intent or purpose* to serve the market'" in the District of Columbia, <u>in personam</u> jurisdiction did not exist) (emphasis added).

7

Although the Plaintiff cites <u>Pennzoil Products Company v. Colleli & Associates, Inc.</u>, 149 F.3d 197 (3rd Cir. 1998), the Plaintiff fails to offer any explanation of <u>Colleli</u>'s facts. <u>Colleli</u> was an action by a Pennsylvania oil refiner against an Ohio manufacturer of petroleum solvents. The solvents had been sold in Ohio to oil producers in Ohio. The oil, containing the solvent, was shipped by the Ohio producers to the Pennsylvania refinery where it allegedly caused damage. In making its determination that <u>in</u> <u>personam</u> jurisdiction was proper, the court noted that the following factors were pertinent: (1) prior to the events giving rise to the lawsuit, and in response to complaints by the Pennsylvania refinery, Colleli's owner personally consulted with the Pennsylvania refinery to discuss and alleviate the problem caused by the solvents; (2) approximately 60% of the crude oil produced by the Ohio oil producers went to the Pennsylvania refinery; and (3) Colleli's owner knew that the oil produced by the Ohio producers to whom he had sold the solvent was then sold to the Pennsylvania refineries. <u>See</u> <u>Colleli</u>, 149 F.3d at 206. In other words, the relationship between Colleli and the Pennsylvania refineries was clearly a product of Colleli's purposeful actions, directed toward the Pennsylvania plaintiff. The Plaintiff has offered no evidence of such purposeful or direct actions by this Defendant toward the market in the District of Columbia. Further, and unlike this case, Colleli had actual knowledge, as a result of its own purposeful actions, that the same offending products were going to Pennsylvania.

In Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610 (8th Cir. 1994), the only other case cited by the Plaintiff in support of its "distribution" argument, the plaintiff sued a Japanese fireworks manufacturer in Nebraska. The manufacturer (Hosoya) was not located in Nebraska. However, and unlike here, Hosoya's distributor did have a salesman located in Nebraska, and its products were sold in Nebraska to Nebraska residents. Barone, 25 F.3d at 611. No such facts exist in the present case.

Barone is distinguishable not only factually but also in its application of law. The Barone court suggests that Hosoya's simple awareness that its products may be sold in Nebraska was enough to establish jurisdiction over that defendant in Nebraska. See Barone, 25 F.3d at 613. This rationale is inconsistent with prior holdings of this Court. As this Court has explained, the defendant's awareness that the stream of commerce will sweep its product into the forum state "does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state." Formica v. Cascade Candle Co., 125 F. Supp. 2d 552, 555 (D.D.C. 2001), quoting Asahi Metal Industry Company, Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 112 (1987). See also Gonzalez v. Internacional De Elevadores, S.A., 891 A.2d 227, 234 (D.C. 2006) ("transacting business" as used in §13-423(a)(1) means business activity "purposefully directed" at District of Columbia residents).

### iii. "Single Act" Basis For Jurisdiction Requires A Nexus That Is Not Present In This Case.

The Plaintiff cites three decisions in support of the argument that the failure of one valve in the District of Columbia is sufficient to establish jurisdiction over the Defendant. Of the three cases cited by the Plaintiff, only one case actually applies the "one act" principle in its holding. Manifold v. Wolf Coach, Inc., 231 F. Supp. 2d 58 (D.D.C. 2002), was a claim against a nonresident company that had retrofitted a van with a mast antenna specifically for Fox Television Station in the District of Columbia. The plaintiff sued for negligence after the mast struck a power line and caused him severe burns.

The Wolf Coach Court considered the "quality and nature" of the defendant's contacts with the District of Columbia. Wolf Coach, 231 F. Supp. 2d at 62. In doing so, it noted that, not only had the defendant negotiated directly with Fox Television's representatives, who were located in the District, but the "end result" was a van to be used for news gathering in the District of Columbia. Id. The Court noted that, unlike the defendant in Asahi, the Wolf Coach defendant had purposefully directed the product to the District of Columbia, and had even personally delivered it there following the purchase by Fox Television.[4]

---

[4] The Wolf Coach decision also discussed and found significant the relationship between the transaction of business by the defendant (the provision of the van) with the injury. The nexus requirement of the long-arm statute is discussed below. The absence of nexus between shipments of unrelated valves to some other site in the District and the injury alleged by the Plaintiff further undermines the Plaintiff's jurisdictional argument.

As a result, the <u>Wolf Coach</u> case not only does not support the exercise of jurisdiction over this Defendant, it undermines the Plaintiff's argument.

**b.** ***The Defendant's WebSite Does Not Amount To Purposeful Activity Directed Toward The District Of Columbia.***

The Plaintiff argues that the Defendant's website contains some evidence that the Defendant intends to sell its products nationally. This argument fails for two reasons. First, reliance on Defendant's website is merely a "stream of commerce" argument, without the "something more" to demonstrate purposeful activity directed to that forum which is required. The ability of District residents to access a website does not show any "persistent course of conduct" by the defendants in the District. <u>Kline v. Williams</u>, 2006 WL 2265414, * 3, No. 05-01102 (D.D.C., August 8, 2006). Second, it is well settled that passive websites, such as this Defendant's (see Affidavit of Geoff McLaughlin, ¶19), do not provide a basis for jurisdiction. <u>See</u> <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506, 512, n. 5 (D.C. Cir. 2002); <u>see</u> <u>also</u> <u>Investment Group, LC v. IFX Markets, Ltd.</u>, 479 F. Supp. 2d 30, 37-38 (D.D.C. 2007); <u>Baan</u>, 81 F. Supp. 2d at 79.

**c.** ***The Appropriate Inquiry Plaintiff Must Satisfy Is Whether The Defendant Has Made Purposeful Efforts To Establish Contacts Here.***

Plaintiff suggests that there exists some obligation upon Defendant to curtail any use of its "products" in the District of Columbia, and, in the absence of same, jurisdiction in the District of Columbia. This logic demonstrates that the Plaintiff has failed to focus on the proper inquiry which is: has there been some

purposeful effort to direct Defendant's products to consumers in the District of
Columbia? As discussed in the Motion and in the preceding 11 pages, there has
been no such effort by the Defendant.

> **2.     Plaintiff Has Failed To Address The Nexus Requirement Of The
> Long-Arm Statute.**

The requirement of a nexus between the alleged "transacting business"
and the injury was discussed at length in the Motion. Nonetheless, the Plaintiff
has made no effort to address this requirement in its Opposition. The language
of the long-arm statute clearly establishes that a "plaintiff's jurisdictional
allegations must arise from the same conduct of which the plaintiff complains."
Finshipyards, 900 F. Supp. at 520. Section (b) of the statute "bars any claims
unrelated to the particular transaction carried out in the District of Columbia
upon which personal jurisdiction allegedly is based: The claim itself must have
arisen from the business transacted in the District or there is no jurisdiction."
Novak-Canzeri v. Saud, 864 F. Supp. 203, 206 (D.D.C. 1994). There simply is no
relationship between the injuries alleged by the Plaintiff and the few shipments
into the District of Columbia, to someone other than the Plaintiff (the Plaintiff
admittedly purchased its valves in Maryland), of a product that was not the
product that allegedly caused Plaintiff's damages.

Even where the business transaction that allegedly provides the basis for
jurisdiction is the same type of business that is alleged to have caused the injuries
(such as the generic delivery of product), there is an insufficient relationship

between the business and injury.  Ross v.  Product Development Corp., 736 F. Supp. 285, 288 – 289 (D.D.C. 1989).   This principle was demonstrated in Berwyn Fuel, Inc. v. Hogan, 399 A.2d 79 (D.C. 1979).   In that case, a District resident had been injured in Maryland when the Maryland defendant's driver collided with plaintiff's vehicle.  The plaintiff filed suit in the District, arguing that the long-arm statute gave the Superior Court jurisdiction over the defendant, a fuel delivery service.  The defendant did make deliveries of fuel in the District of Columbia.  However, this Court held there was not a sufficient connection, as required by the long-arm statute's section (b), between the injury and the defendant's contacts with the District.  The exercise of personal jurisdiction over the Defendant, based upon the fact that it made fuel deliveries in the District of Columbia, was improper.  The business done by the Defendant in the District of Columbia was not sufficiently related to that which caused Plaintiff's injury; accordingly, the court did not have personal jurisdiction over the defendant. Berwyn Fuel, 399 A.2d at 80.

Applying Berwyn Fuel to this case, there is not a sufficient nexus between the business allegedly transacted by Defendant in the District of Columbia and the injuries alleged by the Plaintiff.  The Court could dismiss the action on this basis alone, and with no further reference to the facts or claims herein.

**B.**     **Plaintiff Cannot Establish That Defendant Regularly Does Business or Derives Substantial Revenue From Goods Sold In the District.**

At page 8 of its Opposition, Plaintiff argues that jurisdiction is proper under §13-423(4).  It claims further at page 10 that the volume of business transacted and/or revenue derived in the District of Columbia is irrelevant.  It appears that the Plaintiff has confused sections (a)(1) and (a)(4) of the long-arm statute.  The language of section (4) makes clear that the volume of alleged business is very much relevant to the court's ability to exercise jurisdiction; indeed it is the basis for jurisdiction under that section:

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia <u>if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia</u>;

(emphasis added).  The Plaintiff's suggestion that the Court should disregard the absence of any such activity by this Defendant in the District of Columbia is without merit.  The Plaintiff cannot establish that the Defendant transacted any business in the District of Columbia, let alone "regular" business.  Likewise the Plaintiff cannot establish any persistent course of conduct by Defendant to enter the marketplace or to sell its products in the District of Columbia.  Finally, Plaintiff cannot establish that Defendant derived substantial revenue from goods sold in the District.  As a result, Section 13-423(4) of the long-arm statute does not provide a basis upon which to assert personal jurisdiction.

**C.    The District Of Columbia Does Not Have A Manifest Interest In The Case.**

The Plaintiff offers many descriptions of the problems that may result if it is determined that all or substantially all of a particular type of Defendant's valves is defective:  Plaintiff will have to replace many valves; the Plaintiff is a small company that may be bankrupted by the replacement of the valves (Opposition, p. 12); injury and damage could occur in the immediate vicinity if the valves fail.   However, the Plaintiff's action is about its <u>own</u> damages, which necessarily occurred in Maryland.  It is a resident of Maryland.  It purchased the allegedly defective valves in Maryland.   It is not about the damages that unnamed, unknown residents of the District might potentially suffer at some future time, as Plaintiff has no standing to assert such claims.  The District's interest in this suit, therefore, is minimal, and certainly not equal to that of Maryland.

The absence of interest is an additional reason why the Court should dismiss the case.  Where neither the plaintiff nor the defendant were District residents, the Court in <u>Brunson v. Kalil & Company, Inc</u>., 404 F. Supp. 2d 221 (D.D.C. 2005), granted a motion to dismiss for lack of personal jurisdiction, noting the long-arm statute was designed "to afford <u>District</u> residents broad access to our courts . . . . " <u>Brunson</u> at 233 (emphasis original).   This reasoning comports not only the law, but with the principles of judicial economy and common sense.

## II.    DECLARATORY JURISDICTION

The Plaintiff's argument in favor of declaratory jurisdiction does little more than restate the allegations of the Complaint.   The only legal argument it offers is based upon National Railroad Passenger Corp. v. Consolidated Rail Corp., 670 F.2d 424 (D.D.C. 1987).  Citing National Railroad, the Plaintiff pronounces that "based on the law of products liability, a Court can determine the respective rights of the parties."  Opposition, p. 11.   Whatever the quoted language may mean, the National Railroad case has nothing to do with product liability law; nor does it stand for the principle for which it has been cited by the Plaintiff.   The Plaintiff goes further, suggesting at page 12 of its Opposition that National Railroad supports the exercise of declaratory power on the basis of "public policy."   Again, the National Railroad Court makes no such statement.  The only "public policy" issue discussed in that case is whether public policy prohibited one party to an indemnity agreement from indemnifying another for that other party's gross negligence.   See National Railroad, 670 F. Supp. at 428 – 429.

The Plaintiff insists that "there are no hypothetical facts here," and contends that an expert has examined only 2 valves.  Opposition, p. 12.   This effort to convert the hypothetical to the actual overlooks that Plaintiff has not confined its claims to those 2 valves.  Plaintiff seeks indemnity against any and all claims relating to the allegedly possible, as-yet-to-occur fractures of over 13,000 valves purchased over the course of multiple years, and the possible, as-

yet-to-occur allegations of damages relating to such possible, as-yet-to-occur

fractures.  It has surely forgotten the contents of paragraph 55 of its Complaint:

> Due to the ongoing nature of Quality Air's <u>potential</u> legal exposure to
> <u>possible</u> claims . . . Quality Air seeks a declaratory judgment . . . that all
> such losses, including defending such claims, are the responsibility of
> Hammond.

(emphasis added).  Count VI of the Complaint articulates a hypothetical claim

for relief.  The declaratory power of the Court was not designed to address such

a claim.  <u>See</u> 28 U.S.C. §2201(a), requiring an "actual case or controversy."

## III.  THE TRANSACTION DOES NOT FALL WITHIN THE CONSUMER PROTECTION ACT.

The Plaintiff's argument that it should be protected by the Consumer

Protection Act is summarized at page 15 of its Opposition.  The Plaintiff argues

that the installer of the piping to home systems is a consumer, who should be

protected under the Act against the likes of this Defendant.  "Otherwise, there

will be an incongruous result" if a company such as the Plaintiff is not

considered a consumer, while "an individual purchasing a product in a store for

home installation" is a consumer.  Not surprisingly, Plaintiff offers no authority

for this legally flawed position.

This same rationale was addressed and flatly rejected in <u>Adam A.</u>

<u>Wechsler & Son, Inc. v. Klank</u>, 561 A.2d 1003 (D.C. 1998).  The Court of Appeals,

explaining the scope and purpose of the Act, instructed that:

> . . . the relevant distinction is one between retail and wholesale
> transactions.  <u>Transactions along the distribution chain that do not involve</u>
> <u>the ultimate retail customer are not "consumer transactions" that the Act</u>

<u>seeks to reach.</u>  Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers.  Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction.  If the purchaser is regularly engaged in the business of buying the goods or service in question for later resale to another in the distribution chain, or at retail to the general public, then a transaction in the course of that business is not within the Act.

(emphasis added).

## IV.   PLAINTIFF'S REQUEST FOR DISCOVERY HAS NOT BEEN SUPPORTED BY AN ADEQUATE SHOWING OF GOOD-FAITH BASIS.

Where a plaintiff meets a defendant's affidavits in support of a motion to dismiss with speculation, that plaintiff's request for jurisdictional discovery must be dismissed.  <u>Caribbean Broadcasting System, Ltd. v. Cable & Wireless</u>, 148 F.3d 1080, 1089-1090 (D.C. Cir. 1998).   A plaintiff seeking jurisdictional discovery is obligated to show a basis for a good-faith belief that such discovery will permit it to show that the court has personal jurisdiction over the defendant.  <u>Caribbean Broadcasting</u>, 148 F.3d at 1090.  The plaintiff must show a "colorable basis" for jurisdiction before subjecting the defendant to intrusive and burdensome discovery.  <u>Id</u>.   Plaintiff has failed to do so here as outlined above.

The Plaintiff cites <u>Edmond v. U.S. Postal Service</u>, 949 F.2d 424 (D.C. Cir. 1991) and <u>Baan</u> (citing <u>Edmond</u>) for the broad proposition that to deny jurisdictional discovery is an abuse of discretion.   This is neither consistent with <u>Edmond</u> nor a correct statement of the law.  Rather, the courts recognize a need to balance the burden upon a defendant, over whom there may be no

jurisdiction, against legitimate, good-faith, factually supported requests for necessary information.   In fact, the Edmond Court noted that a trial court's decision to deny jurisdictional discovery would not be overturned unless its decision to do so was an abuse of discretion.   Edmond, 949 F.2d at 425.

        The Plaintiff has offered no more than mere speculation about what it may be able to discover in response to an affidavit from the Defendant.  Recall the allegations of the Complaint regarding jurisdiction:  (1) Hammond valves are shipped in interstate commerce throughout the United States (Complaint, ¶4); (2) "upon information and belief" the Defendant regularly conducts business in the District of Columbia (¶5); (3) that the Defendant "by virtue of its business is deemed to reside in the District" (¶11).   The first allegation would not support jurisdiction, as has been shown above.  The second, if supported by any facts at all, might support the Plaintiff's jurisdictional argument.   But the affidavit and other evidence submitted by the parties shows the referenced allegations regarding jurisdiction to be incorrect.  It is interesting that this Plaintiff, a commercial HVAC company, which would presumably know the market for such products, and which would presumably be a target of any advertising efforts of a company like the Defendant, can offer absolutely nothing to support its claim of jurisdiction.   Nor does the Plaintiff offer in its Opposition any affidavits or evidence to counter the affidavit filed by the Defendant in this respect.

Moreover, and equally important, even if all of the Plaintiff's arguments and allegations in the Opposition are taken at face value, Plaintiff has still failed to establish a nexus between any business transacted by the Defendant in the District and its own alleged injuries.   Consequently, additional discovery of the Defendant's contacts will have no affect on the jurisdictional outcome. Accordingly, the request for discovery should be denied.  See Savage v. Bioport, Inc., 460 F. Supp. 2d 55, 62 (D.D.C. 2006) (denying jurisdictional discovery for the same reasons).

## CONCLUSION

Because the Plaintiff has failed to offer valid legal arguments in support of the exercise of in personam jurisdiction against the Defendant, the action should be dismissed.  Nor do the facts alleged regarding the "potential future claims" describe an actual case or controversy, such that the exercise of declaratory jurisdiction is proper.  There are additional reasons why Counts V and VII of the Complaint should be dismissed, as well.  The Plaintiff essentially concedes that it has not offered the specificity required to meet the requirements of Fed. R. Civ. P. 9(b), requiring dismissal of Count VII of the Complaint.   Regarding Count V, the Consumer Protection Act claim, the Plaintiff's argument is directly contrary to a prior decision of the D.C. Court of Appeals.   That decision makes clear that the

Consumer Protection Act was not designed to apply to these parties or the

underlying transaction.

Respectfully submitted,


 /s/ Valerie Tetro
Valerie L. Tetro, Esquire (#464450)
Jennifer S. Jackman, Esquire (#466922)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20036
(202) 659-6800/(202) 331-0573 (facsimile)
Counsel for Defendant


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served electronically this 15th day of July, 2008 upon:

Kevin E. Byrnes, Esquire
Francis X. McCullough, Esquire
Grad, Logan & Klewans, P.C.
3141 Fairview Park Drive
Suite 350
Falls Church, VA  22042
Counsel for Plaintiff


 /s/ Valerie Tetro
Valerie L. Tetro


*220790*

21