UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**QUALITY AIR SERVICES, L.L.C.,**           )
                                            )
       **Plaintiff,**      )
                                            )
       v.                  )   Civil Action No. 08-690 (ESH)
                                            )
**MILWAUKEE VALVE COMPANY, INC.**           )
**d/b/a/ HAMMOND VALVE COMPANY**            )
                                            )
       **Defendants.**     )
_____)


## MEMORANDUM OPINION AND ORDER

Plaintiff has brought this product liability suit alleging that defendant's product, which plaintiff has installed throughout the D.C. metropolitan area, was improperly designed and/or manufactured. Defendant has filed a motion to dismiss the complaint. For the reasons stated herein, defendant's motion will be granted in part and denied in part.

### BACKGROUND

Plaintiff Quality Air Services is a Maryland limited liability company with its principal place of business in Rockville, Maryland. (Compl. ¶ 1.) Plaintiff is in the business of installing and repairing heating, ventilation, and air conditioning ("HVAC") units. (*Id.*) It specializes in the restoration, maintenance, and replacement of fan coil units (convectors) for residential condominiums and rental units within multi-family housing housing buildings in the District of Columbia, Maryland, and Northern Virginia. (*Id.* ¶¶ 1-2.)

Defendant Milwaukee Valve Company, which does business as Hammond Valve Company,

1

is a Wisconsin corporation with its offices in New Berlin, Wisconsin. (*Id.* ¶ 3; Def.'s Ex. 1 [Affidavit of Geoff McLaughlin] ¶ 4.) Defendant manufactures and sells valves which are used in HVAC systems in multi-family housing buildings. (Compl. ¶ 4.) It has no representatives, offices, or agents located in Washington D.C. (Def.'s Ex. 1 ¶ 10), but sells its products through distributors and wholesalers rather than directly to service companies such as plaintiff. (*Id.* ¶ 8.) None of defendant's distributors or wholesalers is located in the District of Columbia. (*Id.* ¶ 9.) Approximately 15 times per year over the last 10 years, defendant has shipped valves directly to a job site in the District of Columbia at the request of one of its distributors. (*Id.* ¶ 12.) These sales account for no more than .0025% of defendant's annual sales. (*Id.* ¶ 13.) None of these shipments have included the 8911 valve. (*Id.* ¶ 14.) Defendant is not registered to do business in the District of Columbia, and has never paid taxes in the District. (*Id.* ¶¶ 5, 16, 17.)

Between late 2004 and early 2007, plaintiff purchased 13,320 of the 8911 valves and installed them in buildings in Maryland, Virginia, and the District of Columbia. (Compl. ¶ 8.) Plaintiff purchased these valves from a Virginia branch of Noland Company, a wholesale distributor of mechanical equipment and supplies. (*Id.* ¶ 14; Def.'s Mot. at 3.) Plaintiff alleges that these valves are defective. (*Id.* ¶ 9.) As of the time when the complaints was filed, approximately 15 of these valves have failed and are causing leaks and flooding in the homes in which they were installed. (*Id.* ¶ 24.) Plaintiff alleges that at least one of these failures occurred in the District of Columbia. (*See* Pl.'s Opp'n at 1.)

On April 22, 2008, plaintiff brought this suit alleging that defendant has breached its express and implied warranties with respect to the sale of the 8911 valves; sold a defective and unreasonably dangerous product; and violated the District of Columbia Consumer Protection Act, D.C. Code § 28-3904 (d) and (e). (Compl. ¶¶ 30, 35, 39, 45, 51.) Plaintiff further alleges that

defendant's action were so "malicious and egregious" as to "constitute fraud and deceit." (*Id.* ¶ 59.) Plaintiff requests compensatory and punitive damages, as well as a declaratory judgment holding defendant liable for all losses and damages, including attorneys' fees, incurred by plaintiff as a result of any future lawsuits against it based on its installation of these valves. (*Id.* at 13-14.)

Defendant has moved to dismiss the complaint for lack of personal jurisdiction. (Def.'s Mot. 2.) Defendant further asserts that plaintiff has failed to state a claim for relief under the D.C. Consumer Protection Act and that plaintiff has failed to plead fraud with specificity. (*Id.* 30, 32.) Finally, defendant argues that the possibility of future claims against plaintiff does not present an justiciable controversy and therefore requests dismissal of plaintiff's declaratory judgment claim. (*Id.* 20.) The Court will address each of the defendant's arguments in turn.

## ANALYSIS

**I.    The Court Has Personal Jurisdiction Over Defendant**

"If a defendant does not reside within or maintain a principal place of business in the District of Columbia, then the District's long-arm statute, D.C. Code § 13-423, provides the only basis [o]n which a court may exercise personal jurisdiction over the defendant." *Savage v. Bioport*, 460 F.Supp.2d 55, 60 (D.D.C. 2006) (citing *Deutsch v. United States Dep't of Justice*, 881 F.Supp. 49, 52 (D.D.C. 1995), *aff'd*, 93 F.3d 986 (D.C. Cir. 1996)). This statute provides, in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's -
>
> (1) transacting any business in the District of Columbia; . . .
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. CODE. § 13-432 (2001). The statute further provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* at § 13-432(b).

Plaintiff relies on sections (a)(1), the "transacting business" prong of the long-arm statute and (a)(4), the "tort without, injury within" prong of the long-arm statute. (*See* Pl.'s Mot. 4,8.)[1] Plaintiff argues that by placing its products into the stream of commerce with the knowledge that they would be installed in the District, and by shipping its valves into the District itself, defendant has transacted business in the District sufficient to subject it to this Court's jurisdiction. (*Id.* 5-6.) Defendant contends that it did not purposefully direct any business towards the District of Columbia, relying primarily on its lack of presence in the District, either through its own offices or through those of its network of authorized distributors and wholesalers. The Court finds defendant's position unpersuasive.

The "transacting any business" prong of the District of Columbia long-arm statute permits the exercise of personal jurisdiction to the full extent authorized by the Due Process Clause of the Constitution. *See Jackson v. Loews Washington Cinema*, 944 A.2d 1088, 1092 (D.C. 2008). Thus, "the appropriate inquiry is whether [defendant has] the requisite 'minimum contacts' with the District so that the exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Material Supply Int'l Inc. v. Sunmatch Industrial Co., Ltd.*, 62 F.Supp.2d 13, 19 (D.D.C. 1999) (citing *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F.Supp. 558, 563 (D.D.C. 1981) (citation omitted)). Even "'a single act

---

[1] Because the Court concludes that it has personal jurisdiction pursuant to § 13-432(a)(1), it does not reach the question whether it could also assert jurisdiction under (a)(4).

may be sufficient to constitute transacting business," so long as that contact is 'voluntary and deliberate, rather than fortuitous.'" *Jackson*, 944 A.2d at 1093 (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992, 995 (D.C. 1981)) (internal citation omitted).  Therefore, as the D.C. Court of Appeals has recently explained, the Court's minimum contacts inquiry should be guided by "a search for meaningful acts reflecting 'purposeful affirmative activity within the District of Columbia.'" *Id.* (quoting *Bueno v. La Compania Peruana de Radiofusion, S.A.*, 375 A.2d 6, 8 (D.C. 1977) (citation omitted)).  "When such a connection to the forum state is established, due process is satisfied because the defendant should 'reasonably anticipate being haled into court there.'" *Id.* 1093-94 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Although defendant has no physical presence in the District nor did it direct its advertising specifically at the District, defendant's network of authorized distributors includes companies both in Maryland and Virginia which indisputably, given their geographic proximity, target contractors like plaintiff who serve the Washington metropolitan area.  Morever, defendant was well aware that it was accessing and benefiting from the D.C. market through its sales to distributors in Virginia and Maryland, as evidenced by its compliance with its distributors' regular requests over the last ten years that it ship its products directly to job sites in the District.  *See Barone v. Rich Bros Interstate Display Fireworks Co.*, 25 F.3d 610, 613-14 (8th Cir. 1994) (personal jurisdiction proper over foreign defendant that made sales in forum through regional distributor).[2]  Finally, defendant placed advertisements in trade journals with a

---

[2] Defendant attempts to distinguish *Barone* on the grounds that in that case, the regional distributor, although located in South Dakota, had a salesperson who operated within the forum state of Nebraska.  (Def.'s Reply 9.)  The presence of the in-state salesperson was not, however, the basis for the *Barone* Court's ruling.  Rather, the Court found that "the location of [the foreign

national audience, which would presumably include customers of its products in the District.[3]

Given defendant's awareness and encouragement of its distributors' sales into the District, defendant should reasonably have been on notice that it could be "haled into court" here based on suits arising out of the sale of its product in the District.[4]

This case is controlled by the D.C. Circuit's decision in *Stabilisierungsfond Fur Wein v. Kaiser-Stuhl*, 647 F.2d 200 (D.C. Cir. 1981). The defendants in *Kaiser-Stuhl* were an Australian corporation that produced wine and its wholly-owned Australian subsidiary, its two

---

defendant's] distributors suggest[ed] an effort to reach much of the country through a limited number of regional distributors," and thus its selection of a distributor in Sioux Falls, South Dakota "conveniently located within short distance of three other states" indicated purposeful intent to avail itself of the benefits of the Nebraska market. *Barone*, 25 F.3d at 613. Similarly in this case, defendant's selection of its distributors and its willingness to accommodate their operations in the District by shipping its parts directly to their job sites in the District, indicates purposeful intent to benefit from sales of their products in this market.

[3] These facts distinguish this case from *Cascade Candle Company*, 125 F.Supp.2d 552 (D.D.C. 2001), the primary case defendant offers in support of its position. In *Cascade Candle*, a Maryland resident was injured at his home by a candle he had purchased at a retail store in the District. *Id.* at 553. Cascade Candle, an Oregon corporation, sold its product to a national distributor based in California, that in turn supplied the candle to the retail store. (*Id.*) Cascade Candle did not sell to a regional distributor that it had reason to know was serving the D.C. market. Nor did Cascade Candle fill orders for its distributor by shipping its products directly into the District. Finally, Cascade Candle did not engage in any kind of national advertising of its product, a fact upon which this Court relied in distinguishing the case from *Fogle v. Ramsey Winch Co*, 774 F.Supp. 19, 21 (D.D.C. 1991). *Cascade Candle Company*, 125 F.Supp.2d at 555.

[4] In its reply, defendant argues that plaintiff has failed to show that its claim arises from the business defendant transacted in the District as required by § 13-423(b). (See Def.'s Reply 4.) Defendant reaches this conclusion by limiting its understanding of its business in the District solely to the actual shipments it made into the District. However, as is clear from the Circuit's opinion in *Stabilisierungsfond Fur Wein v. Kaiser-Stuhl*, 647 F.2d 200, 205 (D.C. Cir. 1981), making sales through a regional distributor that specifically targets the District is considered "transacting business" in the District. Plaintiff's claim clearly arises out of this type of activity by defendant. Thus, plaintiff has shown "that the claim raised . . . ha[s] a discernible relationship to the 'business' transacted in the District" which is all that it is required to meet "the nexus requirement of § 13-423(b)." *Shoppers Food Warehouse v. Moreno*, 746 Ad.2d 320, 333 (D.C. 2000) (en banc) (internal quotation marks and citation omitted).

United States distributors (based in San Francisco in New York), and a District of Columbia liquor store. *Id.* at 202. The Court concluded that it had jurisdiction over the Australian wine companies holding that:

> when the "transacting any business" language is read to extend to the limits of due process, it encompasses a case like the present one where a nonresident defendant ships goods to an intermediary with the expection that the intermediary will distribute goods in a region that includes the District of Columbia

*Id.* at 205. The fact of this case are even stronger in favor of jurisdiction than those in *Kaiser-Stuhl*, given the close proximity of defendant's distributors to the District (which indicates its intent to serve this market) and its actual shipment of its products into the District. Defendant has done more than simply place its product into the stream of commerce. It has "chose[n] a course of conduct that renders sales of [its] [valves] here [in the District] not merely foreseeable, but affirmatively welcomed. Unquestionably, [it] ha[s] a stake in, and expect[s] to derive benefits from, a market for [its] goods in the District." *Id.* Under these circumstances, defendant has purposefully availed itself of the benefits of doing business in this forum and is thus subject to this Court's jurisdiction.

## II. There Is No Case or Controversy Supporting Plaintiff's Claim for Declaratory Judgment

Defendant next argues that plaintiff's Count VI should be dismissed because plaintiff has failed to present a justiciable controversy. (Def.'s Mot. 1.) For the Court to exercise jurisdiction under the Declaratory Judgment Act, it must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

"The controversy must be 'real and substantial . . . admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical set of facts." *Olin Corp. v Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)).

Plaintiff requests a declaratory judgment holding defendant liable for all losses and damages, including attorneys' fees, incurred by plaintiff as a result of any *future* lawsuits against it based on its installation of these valves.  Plaintiff cites no case law in support of its position that the Court has the authority to grant it such broad relief.   Even assuming that this lawsuit results in a finding that defendant's product is defective (a conclusion that would have preclusive effect in subsequent proceedings) the Court would have no basis for holding as a matter of law that, in any case where a customer of plaintiff suffered damage and claimed that the damage was caused by a defective valve, defendant would be obligated to indemnify plaintiff.   In the absence of specific facts to consider, the Court could only postulate what defendant's liability might be. "[T]he declaratory judgment procedure . . . [may not] be used as a 'medium for securing an advisory opinion in a controversy which has not arisen.'" *Olin Corp.*, 5 F.3d at 17 (quoting *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945)).   Because there is no actual controversy before the Court related to potential lawsuits against plaintiff, plaintiff's claim for declaratory relief is dismissed.

### III.    Valves Are Not Consumer Goods Within the Meaning of the Consumer Protection Act

Defendant next moves to dismiss Count V of plaintiff's complaint, which alleges violation of the Consumer Protection Act.  (Def.'s Mot. 30.)  Defendant contends that its valves are not "consumer" goods as defined under the Act.  (*Id.*)  The Court agrees.

D.C. Code § 28-3901(2) defines "consumer" goods as products used or bought "primarily for personal, household or family use" without further explanation. D.C. CODE § 28-3901(2) (2001). However, as defendant points out, this language is almost identical to the definition of "consumer goods" in D.C. Code § 28:9-109, a provision that has previously been interpreted by this Court. (*See* Def.'s Mot. 31-32.) In *Potomac Plaza Terraces, Inc. v. QSC Products, Inc*., 868 F.Supp. 346 (D.D.C. 1994), Judge Harris engaged in a thorough analysis of D.C. Code § 28:9-109, which defines "consumer goods" as those "used or bought for use primarily for personal, family, and household purposes," and concluded that goods used for "household purposes" were the same as "household goods" as defined by D.C. Code § 28:7-209. *Id.* at 351. "Household goods," according to that provision are "furniture, furnishings, and personal effects used by the depositor in the home." D.C. CODE § 28:7-209 (2001). Applying the definition in D.C. Code § 28:7-209, Judge Harris concluded that the roofing materials at issue in *Potomac Plaza Terraces* were not "consumer goods." *Potomac Plaza Terraces, Inc*., 868 F.Supp. at 351.

"Statutory provisions are to be construed not isolation, but together with other related provisions. Thus, "[a] court interpreting a statute should, whenever possible, read the provision in harmony with other provisions to which it naturally relates." *Id.* (citing *Carey v. Crane Serv. Co.*, 457 A.2d 1102, 1108 (D.C. 1983)). Plaintiff offers no persuasive reason not to interpret "household" goods consistently. The Court therefore concludes that defendant's valves are not "consumer goods" as they are not furniture, furnishings, or personal effects used in the home. Plaintiff's claim based on the D.C. Consumer Protection Act is dismissed.

**IV.    Fraud and Deceit Have Not Been Properly Pled**

Finally, defendant has moved to dismiss Count VII of plaintiff's complaint, arguing that plaintiff had failed to meet the pleading requirements of Federal Rule of Civil Procedure 9(b),

which requires fraud to be alleged with particularity in the pleadings. "This heightened pleading standard ensures that the opposing parties have sufficient notice of the claims asserted against them . . . and prevents parties from bringing fraud claims as 'pretext for the discovery of unknown wrongs.'" *Blue v. Fremon Inv. & Loan*, -- F.Supp.2d -- , 2008 WL 2485571, at *3 (D.D.C. 2008) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (internal citation omitted)). "In order to plead fraud with the particularity required by Fed. R. Civ. P. 9(b), the pleader must state the time, place, and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *Bennett Enterprises, Inc. v. Domino's Pizza, Inc.*, 794 F.Supp. 434, 436-37 (D.D.C. 1992) (citation and internal quotation marks omitted). *See also Burman v. Phoenix Worldwide Indus.*, 384 F.Supp.2d 316, 324-25 (D.D.C. 2005).

Plaintiff's complaint includes no more than generalized allegations that defendant was fully aware that its valves were defective and nonetheless placed them into commercial distribution "with reckless, wilful and wanton disregard for the safety of the public." (Compl. ¶¶ 57-59.) It is utterly devoid of specific factual allegations. *See Queen v. Woodstream Corp.*, 248 F.R.D. 73, 78 (D.D.C. 2008) ("[I]n alleging fraud the plaintiff must provide more than conclusory statements that the defendant's actions were fraudulent and deceptive"). Plaintiff has failed to meet the Rule 9(b) standard, and its fraud claim will therefore be dismissed.

**CONCLUSION**

For the reasons stated herein, defendant's motion to dismiss [Dkt 7] will be GRANTED in part and DENIED in part. Plaintiff's counts V, VI, and VII are dismissed with prejudice. An initial scheduling conference is set for August 7, 2008 at 10:00 a.m.

                                                             /s/
                                      ELLEN SEGAL HUVELLE
                                      United States District Judge

Date:   July 21, 2008